[Crim. No. 885. First Appellate District, Division Two.—May 17, 1920.]

THE PEOPLE, Respondent, v. FLORENCE W. BLISS, Appellant.

[1] CRIMINAL LAW — FAILURE OF INFORMATION TO CHARGE PUBLIC OFFENSE—MOTION IN ARREST OF JUDGMENT.—The objection that an information does not state facts sufficient to constitute a public offense is not waived by a failure to demur, but may be raised by a motion in arrest of judgment.

[2] ID.—OBTAINING MONEY UNDER FALSE PRETENSES—INDUCEMENT TO PART WITH PROPERTY.—In charging the crime of obtaining money under false pretenses, the false pretenses must be a material element in inducing the prosecuting witness to part with his money or property.

[3] ID.—RECEIPT OF CONSIDERATION PROMISED—PRESUMPTION—OTHER REPRESENTATIONS IMMATERIAL.—Where an information charging defendant with obtaining money under false pretenses fails to allege that the prosecuting witness did not receive from defendant everything that the latter agreed to give in consideration for the money of the former, there can be no presumption that he did not receive these things, and the information is insufficient to charge a public offense on the part of defendant, notwithstanding it charges the latter with knowingly making false and untrue representations as to numerous other matters.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a motion in arrest of judgment. A. F. St. Sure, Judge. Reversed.

The facts are stated in the opinion of the court.

2. Extent to which false pretenses must be calculated to deceive in order to be indictable, note, 7 **Ann. Cas.** 32.

J. R. Cunnyngham, H. H. McPike and Gilbert L. Jones for Appellant.

U. S. Webb, Attorney-General, and John R. Riordan, Deputy Attorney-General, for Respondent.

LANGDON, P. J.—This is an appeal by the defendant from a judgment of conviction of the crime of obtaining money under false pretenses, and also from an order denying defendant's motion in arrest of judgment. There are a number of grounds of appeal enumerated in the notice of appeal, but the appellant urges upon our attention but one of these matters, and as this objection, in our opinion, is decisive of the case, it will be unnecessary to discuss any of the others.

[1] The objection is that the information fails in two respects to state facts sufficient to constitute a public offense—first, because no causal connection is shown or can be inferred between the representations alleged to be false and the parting with the money; and, second, because the information fails to allege facts showing that the complaining witness, Lansdale, was defrauded.

The objection to the information is a matter of substance and not of form and was not waived by a failure to demur and was properly raised by the motion in arrest of judgment. (Pen. Code, secs. 1004, 1012, 1185; *People* v. *Ross*, 103 Cal. 425, 428, [37 Pac. 379]; *People* v. *Smith*, 103 Cal. 563, 566, [37 Pac. 516]; *People* v. *McKenna*, 81 Cal. 158, [22 Pac. 488].)

The information alleges that the defendant made certain representations to W. R. Lansdale with fraudulent intent. The representations are then set out. In the brief filed on behalf of the state these allegations are summarized as follows:

"1. That defendant was the owner of a valuable mine in the state of Nevada known as the Lucky Girl group of mines;

"2. That said mines were of the value of one hundred thousand dollars.

"3. That defendant had on deposit in the Central National Bank of Oakland four thousand seven hundred dollars;

"4. That defendant had on deposit in said bank twenty-five thousand dollars to her credit as executrix and sole legatee of the McIntyre estate;

"5. That defendant was worth over one million dollars and was the owner of property in New York of the value of over one million dollars;

"6. That defendant was the owner of ten sections of wheat land near Alberta, Canada, worth over one million dollars;

"7. That defendant owned two large hotels, seventeen granaries and a traction engine all situate near Alberta, Canada;

"8. That defendant had left Canada because that country had gone dry and she was compelled to close the bars of the hotels;

"9. That defendant received an income of six thousand five hundred dollars payable every forty days;

"10. That she had given instructions to the Canadian Bank of Commerce to transfer all money on deposit with said bank, amounting to the sum of six thousand five hundred dollars, to the Elko National Bank, Nevada, and that said sum would be on deposit to her credit January 1, 1918;

"11. That she had discharged her attorney and that he had attached and garnished her money in the sum of four thousand seven hundred dollars on deposit in the Central National Bank of Oakland, and that she was thereby prevented from withdrawing any part thereof."

It is then alleged that these representations, with the exception of the first and second, are false and untrue. Then follows an allegation that the defendant knew the representations were untrue, and that Lansdale, believing said representations, and being deceived thereby, was induced by reason thereof to enter into a certain agreement. The terms of the agreement are then specified, and they are that the defendant would hire and employ said Lansdale and his wife and son at specified salaries at the Lucky Girl group of mines, and that the defendant would sell and convey to said Lansdale an undivided one-third interest in said group of mines. In consideration of this agreement, said Lansdale paid the defendant three hundred dollars. It is alleged that Lansdale "in pursuance of said promises, representations and agreements so made by said Florence W. Bliss, and being deceived thereby, did then and there pay

over and deliver to the said Florence W. Bliss the sum of three hundred dollars.'' There is no direct allegation, nor any allegations from which it might be inferred, that the defendant did not own the Lucky Girl group of mines; that they were not worth one hundred thousand dollars; that Lansdale and his wife and son were not employed by the defendant, and that they did not get a one-third interest in the said mine.

It seems clear, therefore, that there is no causal connection shown between the allegations alleged to be false and the parting with the three hundred dollars by Lansdale. [2] It is a well-settled rule that in charging the crime of obtaining money under false pretenses, the false pretenses must be a material element in inducing the prosecuting witness to part with his money or property. (*People* v. *Kahler*, 26 Cal. App. 449, [147 Pac. 228]; *People* v. *Haas*, 28 Cal. App. 182, [151 Pac. 672]; *People* v. *Canfield*, 28 Cal. App. 792, [154 Pac. 33].)

It is contended by the respondent that this case fairly falls within the rule of the case of *People* v. *Griesheimer*, 176 Cal. 44, [167 Pac. 521]. In that case it is said: ''While there is no direct allegation that the money was paid to the defendant as a subscription or loan to the 'Fatherland Magazine,' a reader of the information could hardly draw from it any other inference than that the payment was made for such purpose. It may be conceded that a direct allegation to this effect would have been more in accord with technical requirements. But what was intended to be charged in this connection is perfectly plain from the language in fact used, and no person of common understanding could fail to understand that it was substantially charged, by necessary inference at least, that the money was paid because of the alleged false representations and for the purpose suggested thereby.''

In the present case it not only does not appear by necessary or even possible inference that the money was paid because of the representations which are alleged to have been false, but it is expressly charged in the information that the money was paid for a specific purpose, i. e., in consideration of a promise to give to Lansdale a one-third interest in a valuable gold mine owned by defendant, and in further consideration of the promise by the defendant to

employ Lansdale and his family at that mine. It is apparent that if one is purchasing an interest in a mine and securing employment therein—an inducing representation would be as to the ownership and value of the mine. It is clear that the representations concerning these facts were the inducing cause for the parting with the money, and these representations are not alleged to have been false. The only representations alleged to have been false are representations totally disconnected with the purpose for which Lansdale parted with his money. A similar question is presented in the case of *People* v. *Kahler; supra;* indeed, that case seems to present a legal situation closely analogous to the one here. That case is discussed and approved in the case of *People* v. *Canfield, supra.*

In the Kahler case it is said: "While not alleged, it is no doubt true that Cogan was induced to buy the drums and traps in reliance upon defendant's promise to give his son musical instruction, and to secure him employment as soon as he was sufficiently proficient. It was this promise which induced the prosecutor to deal with him and not the representation of existing facts in reliance upon the truth of which Cogan believed that defendant would fulfill his promise." So, in the present case, it was the promise to convey a one-third interest in the mine and to employ the prosecutor and his family which caused him to enter into the agreement with the defendant and to part with his money, and not the representations of existing facts as to defendant's wealth, which latter may have given the prosecutor additional reason to believe that the defendant would fulfill her agreement, but were not the consideration upon which he parted with his property.

[3] Furthermore, the information fails to allege facts showing that Lansdale was defrauded. There is no allegation that Lansdale did not receive from the defendant just what it is alleged she agreed to give him—a one-third interest in this mine and employment for himself and family. There can be no presumption that Lansdale did not receive these things, in the absence of an allegation to that effect, and if he received what defendant had agreed to give him, there would be no offense on the part of the defendant. (*People* v. *Tufts,* 167 Cal. 266, 270, [139 Pac. 78].) It is clearly apparent that if defendant did own the mine, which

was of the value claimed, and did give to Lansdale a one-third interest therein, and employment for himself and family, it would be immaterial in a criminal inquiry whether or not she falsely represented that she owned in addition thereto a million dollars' worth of real property in Canada and a million dollars' worth of real property in New York, or all the wealth of the Aztecs, as Lansdale was not led to believe that he would be entitled to any interest in any property except the mine.

The motion in arrest of judgment should have been granted, as the information was insufficient to charge a public offense.

The judgment is reversed.

Brittain, J., and Nourse, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 16, 1920, a majority of the Justices not having assented to the granting thereof.