[Crim. No. 1447.  Second Appellate District, Division One.—May 5, 1927.]

THE PEOPLE, Respondent, v. L. M. MOORE et al., Appellants.

[1] CRIMINAL LAW—OBTAINING MONEY BY FALSE PRETENSES—INDICTMENT.—In a prosecution for obtaining money by false pretenses, where defendants represented that they were the owners of a house and lot, an averment in the indictment that defendants were not the owners of and were unable to turn over, convey, or deliver the house and lot, substantially charged, by necessary inference at least, that they did not do so.

[2] ID.—FALSE REPRESENTATIONS—CONSUMMATION OF FRAUD—REPRESENTATIONS AS TO OWNERSHIP OF PROPERTY TO BE CONVEYED.—The

---

1.  See 12 Cal. Jur. 467; 11 R. C. L. 849.
2.  Necessity for passing of property, note, 25 Am. St. Rep. 383.

crime of obtaining money by false pretenses is complete when, by means of such false pretenses, the fraud thereby intended is consummated by obtaining the possession of the property sought, and in such prosecution the crime was consummated when the complaining witness was induced to part with money by defendants' false representations that they were the owners of the property they agreed to convey.

[3] ID.—REPRESENTATION OF A PRESENT OR PAST FACT—PROMISE OF FUTURE PERFORMANCE.—To constitute the crime of obtaining money by false pretenses, representations must be of a present or past fact, not the mere expression of opinion or a representation of an act to be performed in the future, or a mere promise to pay or perform some act, but representation of a present or past fact is within the statute, even though it may be accompanied by a promise.

[4] ID.—INDICTMENT — REPRESENTATIONS AS TO OWNERSHIP OF PROPERTY—PROMISE OF FUTURE CONVEYANCE.—In this prosecution for obtaining money by false pretenses, the indictment which charged as an existing fact that defendants owned a house and lot agreed to be delivered by them was sufficient, although not accompanied by a promise to convey and deliver the house and lot in the future.

[5] ID.—PROMISE TO CONVEY — PERFORMANCE — INDICTMENT.—In such prosecution, an allegation in the indictment that defendants represented that if the complaining witness would pay them a stated sum, by reason of their ownership of a tract of land free of all encumbrances, they "were then and there in a position to and would turn over, convey, and deliver" a certain lot in such tract, together with a house situated thereon, sufficiently alleged when the promises were to be performed.

[6] ID.—INDICTMENT—AGREEMENT TO CONVEY LOT FREE FROM ENCUMBRANCES—ALLEGATION AS TO DELIVERY OF MONEY IN PART PAYMENT—TITLE.—In such prosecution, an averment of the indictment that defendants agreed to convey the house and lot free from encumbrances was not subject to the objection that, since it alleged that money was to be delivered as part payment, it cannot be inferred that the title was to be immediately conveyed, as the property could be conveyed free of encumbrances, subject to a purchase-money mortgage to secure the payment of the balance of the purchase price when due.

[7] ID.—FALSITY OF REPRESENTATIONS—KNOWLEDGE—INDICTMENT.—In such prosecution, an allegation of the indictment that "said pretenses and representations . . . were in all respects utterly false,

3. What amounts to false representation of existing fact, notes, 21 Am. St. Rep. 265; 25 Am. St. Rep. 378; 1 Ann. Cas. 980. See, also, 12 Cal. Jur. 452; 11 R. C. L. 831, 832.

fraudulent and untrue," and that defendants then and there well knew them "to be utterly false . . . at the time of making the same," was a sufficient allegation that the representations were false and untrue when made.

[8] ID.—REPRESENTATIONS BY AGENT—KNOWLEDGE OF PRINCIPAL.—In such prosecution, although many representations were made by agents, the evidence was sufficient to justify the finding that such representations were directly authorized or consented to by defendants, who themselves made many direct false representations.

[9] ID.—DEFENSES — OFFER OF OTHER LOTS — GOOD FAITH.—In such prosecution, good faith of defendants in attempting to clear the title to the lot agreed to be conveyed and in offering other lots to the complaining witness is not an absolute defense to a charge of obtaining money by false pretenses, but the crime consisted in the false statements that defendants owned the property and would convey it free of encumbrances, thereby obtaining the money of the complaining witness.

[10] ID.—FRAUDULENT INTENT—QUESTION OF FACT.—In such a prosecution, the question of fraudulent intent is for the jury to determine from all the circumstances of the case.

[11] ID.—FALSE PRETENSES—LOSS OR INJURY—COMPENSATION.—If a person is induced to part with his property by reason of false pretenses and misrepresentations, he is thereby defrauded thereof, even though he may eventually make himself whole in some mode not then contemplated.

---

(1) 25 C. J., p. 628, n. 38. (2) 25 C. J., p. 605, n. 24. (3) 25 C. J., p. 594, n. 22. (5) 25 C. J., p. 618, n. 47. (7) 25 C. J., p. 627, n. 31. (8) 25 C. J., p. 651, n. 46. (10) 25 C. J., p. 653, n. 73. (11) 25 C. J., p. 609, n. 11.

APPEAL from judgments of the Superior Court of Los Angeles County and from orders denying motions for new trials. Carlos S. Hardy, Judge. Affirmed.

The facts are stated in the opinion of the court.

Warren L. Williams, Seymour S. Silverton and I. Henry Harris for Appellant Moore.

---

8. Receiving money through false pretenses of another, note, 25 Am. St. Rep. 382.

9. Intent or ability to repair wrong done, note, 25 Am. St. Rep. 383.

10. See 12 Cal. Jur. 475.

11. See 12 Cal. Jur. 459.

R. P. Congdon for Appellant Lynch.

U. S. Webb, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

McLUCAS, J., *pro tem.*—The defendants were convicted under six counts of the indictment, each count charging the crime of obtaining money by false pretenses. They prosecute this appeal from the judgments and from orders denying motions for new trials.

It is claimed by the appellants that their general and special demurrers to each count should have been sustained. Count one of the indictment is similar to the other counts, differing only as to dates, names of the complaining witnesses, amounts received, and other minor details. The indictment was presented and filed on the second day of February, 1926. In count one it is charged that on or about the twenty-second day of May, 1924, the defendants falsely represented to the complaining witness, Mrs. H. L. Dunning, that they were the owners of a company known as Economy Home Builders; that the defendants were the owners of a tract known and described as tract No. 4901, and owned said tract free and clear of encumbrance; that they owned forests and sawmills, a furniture factory and a furniture warehouse; that if Mrs. Dunning would pay to the defendants the sum of $1,366.67, "that the defendants were in a position to and would turn over, convey and deliver to the said Mrs. H. L. Dunning a certain lot in said tract, together with a house completely furnished thereon, free and clear of all encumbrances"; that in truth and in fact neither the defendants nor Economy Home Builders owned said tract No. 4901, nor any tract of land at all, free and clear of encumbrances, nor any forests, nor sawmills, nor any furniture factories, nor a furniture warehouse; that "defendants were not then and there or at any other time able to turn over, convey, or deliver any lot, together with a house completely furnished or furnished at all, or any lot or house in said tract, or at any other place, or at all"; that the said Mrs. Dunning believed said false representations to be true and relied thereon and was deceived thereby, and by reason thereof did pay over to the defendants the sum of $1,366.67,

as part payment on lot No. 95, tract No. 4901, and a house to be built thereon and completely furnished, to be conveyed and delivered to her; that in truth and in fact the said representations so made were false and untrue and defendants well knew said representations to be false and untrue; that defendants by the means aforesaid did cheat and defraud the said Mrs. H. L. Dunning, and did make said false pretenses for the purpose of inducing Mrs. Dunning to pay over to the defendants the said money as part payment on said lot and said house to be built thereon and completely furnished.

[1] In support of the general demurrer appellants contend that the indictment does not aver facts sufficient to constitute actual fraud, and that the indictment contains no averment as to whether the complaining witnesses in the respective counts received just what it was agreed they were to receive. The indictment charges, in count one, ''That the said Mrs. H. L. Dunning had no other or different information, and then and there believed the said false and fraudulent pretenses and representations, and each of them, so made as aforesaid by the said L. M. Moore and F. M. Lynch, to be true, and relied thereon, and was deceived thereby, and because of said representations and their falsity, and of her, the said Mrs. H. L. Dunning's belief in their truth, and each of them, she, the said Mrs. H. L. Dunning, was then and there deceived and misled, and caused to pay over and deliver, and did then and there pay over and deliver to the said L. M. Moore and F. M. Lynch, the sum of $1,366.67, lawful money of the United States, as part payment on Lot No. 95, Tract No. 4901, contracted to be conveyed and delivered to her, the said Mrs. H. L. Dunning, by the said defendants, and as part payment on a house to be built and completely furnished on said lot by said defendants, and to be conveyed and delivered to her, the said Mrs. H. L. Dunning, by said defendants.'' The indictment further charged: ''That, in truth and in fact, neither the said L. M. Moore and F. M. Lynch, or Economy Home Builders, or either of them, owned said Lilliandale Tract, more particularly described as Tract No. 4901, located in the said county of Los Angeles, or any tract of land at all, free and clear of encumbrances; that, in truth and in fact,

neither the said L. M. Moore or F. M. Lynch, or the Economy Home Builders owned any forest or saw-mills in the north, or at any other place; that, in truth and in fact, neither L. M. Moore or F. M. Lynch, or the Economy Home Builders owned any furniture factory in the city of Los Angeles, or at any other place; and that, in truth and in fact, neither the said L. M. Moore or F. M. Lynch or the Economy Home Builders owned a furniture warehouse in the City of Los Angeles, or at any other place; and that, in truth and in fact, the said defendants were not then and there or at any other time, able to turn over, convey, or deliver any lot, together with a house completely furnished, or furnished at all, or any lot or house in said tract, or at any other place, or at all.'' There is no direct averment in the indictment that defendants did not turn over, convey, or deliver any lot, together with a house completely furnished thereon, free and clear of all encumbrances; but the indictment does aver that defendants were not the owners of said tract and were not at any time able to turn over, convey, or deliver any lot, together with a house completely furnished. It may be conceded that a direct allegation to this effect would have been more in accord with technical requirements, but what was intended to be charged in this connection is perfectly plain from the language in fact used, and no person of common understanding could fail to understand that it was substantially charged by necessary inference at least that defendants did not turn over, convey, or deliver any lot, together with a house completely furnished thereon, free and clear of all encumbrances. (*People* v. *Griesheimer,* 176 Cal. 44 [167 Pac. 521].) In *People* v. *Flowers,* 54 Cal. App. 214 [201 Pac. 468], where the allegations in the information were similar to those contained in the indictment in the instant case, and counsel for defendant had urged that no causal connection was shown between the alleged false pretenses and the effect attributed to them, the court said (page 216) : ''The information presented in this case is not deficient in the respect suggested. It is plain enough in its charging part to enable a person of ordinary understanding to comprehend that the defendant, by pretending to be the owner of property, procured another to deliver to him money and merchandise in exchange for an interest therein. It is clearer in its statement of the facts constituting the

alleged offense than was the information considered in the case of *People* v. *Griesheimer,* 176 Cal. 44 [167 Pac. 521], which the Supreme Court sustained as against the precise contention that is now advanced.''

[2] The crime of obtaining money by false pretenses is complete when, by means of such false pretenses, the fraud thereby intended is consummated by obtaining possession of the property sought. In the case at bar the crime was consummated when the money of the complaining witness was obtained, when she was induced to part with it by reason of the false representations of defendants that they were the owners of the property. In *People* v. *Bryant,* 119 Cal. 595, it is said, at page 597 [51 Pac. 961]: ''Section 532 of the Penal Code provides: 'E'very person who knowingly and designedly, by false or fraudulent representations or pretenses, defrauds any other person of money or property . . . is punishable in the same manner and to the same extent as for larceny of the money or property so obtained.' It is contended in support of the demurrer to the indictment that an offense against this provision of the section is not committed unless it appears that the person to whom the representations were made has been deprived of his property by reason of the fraud committed against him; that as the fraudulent representations charged in this indictment related solely to the property described in the mortgage, and as the mortgage is only a security for the payment of the promissory note, and as it is not charged that the maker of the note is unable to pay the same, or that it has not been paid, the indictment fails to show that she has been defrauded of any of her property. We cannot concur in this construction of the statute. If a person is induced to part with his property by reason of fraudulent pretenses and misrepresentations, he is thereby defrauded of the property so parted with, even though he may eventually make himself whole in some mode not then contemplated. It is not necessary to show that the property has been absolutely lost to him in order to sustain the charge. He is defrauded of his property when he is induced to part with it by reason of the false and fraudulent pretenses and representations, and the offense is complete when by means of such false pretenses the fraud thereby intended is consummated by obtaining possession of

the property sought." In support of their contention that the demurrers should have been sustained for the reason that the indictment fails to allege facts showing the complaining witnesses were defrauded in that they did not receive just what it was agreed they were to receive, appellants cite the case of *People* v. *Bliss,* 47 Cal. App. 503 [190 Pac. 1046]. That case is to be distinguished from the instant case in that in that case it was not alleged that the defendants' representations as to ownership were false.

[3] Appellants further urge in support of the demurrers that the indictment sets forth the performance of an act in the future by the defendants, to wit, the conveyance and the building of a house. It is settled that the representations must be of a present or past fact, not the mere expression of opinion or a representation of an act to be performed in the future, or a mere promise to pay or perform some act. A representation of a present or past fact is within the statute, however, even though it may be accompanied by a promise, as a concurrent promise does not overcome the force of the pretense. (12 Cal. Jur. 453; *People* v. *Bowman,* 24 Cal. App. 781 [142 Pac. 495] ; *People* v. *Green,* 22 Cal. App. 45 [133 Pac. 334].) [4] In the present case the indictment charges a false representation of an existing fact, to wit, ownership of the lot, accompanied by a promise, to wit, to convey and deliver a furnished house and the lot.

[5] Appellants further assert that the indictment does not state when the promises were to be performed. The indictment contains the following allegation: "that, if the said Mrs. H. L. Dunning would pay to the said defendants, L. M. Moore and F. M. Lynch, the sum of One Thousand Three Hundred Sixty-six Dollars and Sixty-seven cents ($1,366.67), by reason of said defendants' ownership of said tract free and clear of all encumbrances and of said forests and saw-mills and of said furniture factory and of said warehouse, the said defendants, L. M. Moore and F. M. Lynch, were then and there in a position to and would turn over, convey and deliver to the said Mrs. H. L. Dunning a certain lot in said tract, together with a house completely furnished thereon, all free and clear of all encumbrances." The only meaning to be gathered from the above allegation is that defendants, upon the payment of the sum

of $1,366.67, would then and there convey and deliver said lot, together with a house completely furnished thereon, free and clear of all encumbrances. [6] Appellants further insist that since the indictment alleged that the money was to be delivered as part payment, it cannot be inferred that the title was to be immediately conveyed. We see no difficulty in this objection. The indictment avers that the defendants agreed to convey, free and clear of all encumbrances. If there was any balance remaining on the purchase price, the property could be conveyed free and clear of all encumbrances, subject to a purchase-money mortgage to secure the payment of the balance of the purchase price when due. [7] Appellants state that there is no averment in the indictment that the representations were false or untrue at the time they were made. The indictment contains this allegation: "That in truth and in fact, the said pretenses and representations so made as aforesaid by the said defendants, L. M. Moore and F. M. Lynch, and each of them, were in all respects utterly false, fraudulent and untrue, and, in truth and in fact, the said defendants L. M. Moore and F. M. Lynch, then and there well knew said pretenses and representations, and each of them so made by them, as aforesaid, to the said Mrs. H. L. Dunning, to be utterly false, fraudulent and untrue at the time of making the same." We believe the foregoing to be a sufficient allegation that the representations were false and untrue at the time they were made. We conclude that the demurrers were properly overruled.

[8] Appellants contend that the evidence was insufficient to sustain the verdicts and judgments thereupon. It appears from an examination of the record that many representations were made by agents. In *People* v. *Green*, 22 Cal. App. 45 [133 Pac. 334, 336], it is said, at page 50: "Before one can be convicted of a crime by reason of the acts of his agent a clear case must be shown. The civil doctrine that a principal is bound by the acts of his agent within the scope of the agent's authority has no application to criminal law. (1 McLain on Criminal Law, sec. 188.) While false pretenses may be made to an agent of the person defrauded, yet when made by an agent they must be directly authorized or consented to in order to hold the principal, for authority to do a criminal act will not be

presumed. (1 McLain on Criminal Law, sec. 683.)'' The record discloses the fact that in some instances the false representations were made directly by the defendants, while in many other cases the jury were justified in finding that the false representations were directly authorized or consented to by the defendants. Appellant Moore testified that some of the sales agents were Rust, Fullerton, Walt, and McAlpine. Several of the witnesses testified that Moore told them that he and Lynch owned the property, that the title was good and the property clear. Many similar statements were made by the aforementioned agents in Moore's presence. Green, the complaining witness of count eight of the indictment, testified that he told Moore that McAlpine had told him the tract was absolutely free of all debts, and that he asked Moore if that was right, and Moore said: ''I verify everything that they say; they are my right-hand men; they are special men; they are right on the ground; I can't do business without them.'' Some of the complaining witnesses testified that defendant Lynch stated that he owned the property and that the title was clear. Other witnesses and purchasers testified to the same effect. Rust, a salesman, testified that Lynch told him he bought the property and that it was free and clear. We believe the evidence to be amply sufficient to justify the jury in finding not only that the false representations were consented to and authorized by both defendants, but that in many cases such representations were directly made by the defendants.

[9] Appellant Lynch attempts to justify the defendants by arguing as to their good faith in attempting to clear the title and in offering lots in another tract to the complaining witnesses. These are not matters of absolute defense to a charge of obtaining money by false pretenses. The crime consisted in the false statements that defendants owned the property and would convey the same free and clear of all encumbrances, thereby obtaining the money of the complaining witnesses. (*People* v. *Wieger*, 100 Cal. 352 [34 Pac. 826].) [10] The question of fraudulent intent is with the jury and is to be determined from all the circumstances of the case. (*People* v. *Bowman*, 24 Cal. App. 781 [142 Pac. 495].) [11] If a person is induced to part with his property by reason of false pretenses and

misrepresentations, he is thereby defrauded of the property so parted with, even though he may eventually make himself whole in some mode not then contemplated. (*People v. Bryant, supra.*)

There being no prejudicial error, it is ordered that the judgments and the orders denying motions for new trials be affirmed.

Conrey, P. J., and York, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 30, 1927.