[Crim. No. 4815. Second Dist., Div. One. Feb. 2, 1953.]

THE PEOPLE, Respondent, v. PERRY BOWEN STAVER et al., Defendants; ARTHUR L. WHITMER et al., Appellants.

Bertram H. Ross for Appellants.

Edmund G. Brown, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an indictment returned by the grand jury of Los Angeles County, the three above-named defendants were accused in one count with criminal conspiracy; 37 counts charged the offense of grand theft, and in each of 10 counts a violation of the Corporate Securities Act was alleged.

As to defendant Whitmer, a prior conviction of forgery, a felony, allegedly committed in Cook County, Illinois, was charged.

A prior conviction of conspiracy, a felony, allegedly committed in Cook County, Illinois, was charged as to defendant Stinson.

The prior convictions were admitted, with the further admission that each of the last two mentioned defendants served a term of imprisonment therefor in the state prison.

Upon the completion of the People's case in chief and before the defendants had entered upon their defense, the indictment was dismissed as to defendant Staver upon motion of the district attorney pursuant to section 1099 of the Penal Code, in order that said defendant might become a witness for the prosecution.

Also, at the conclusion of the People's case, Counts 21, 26, 27, 28, 38, 39, 46, 47 and 48, all charging grand theft, and Counts 29 and 40 charging violations of the Corporate Securities Act were dismissed. The trial proceeded as to the remaining 37 counts.

The two defendants did not take the witness stand in their own behalf.

The jury returned verdicts finding them guilty on all 37 counts that were not dismissed.

Defendants' motions for a new trial were denied and judgments were pronounced against them, by which they were sentenced to state prison, with directions that the sentence on each count was to run concurrently.

From the judgments and the order denying their motion for a new trial, defendants Whitmer and Stinson prosecute this appeal.

Since in the operations of appellants in dealing with those allegedly defrauded, a uniform pattern or plan was utilized insofar as the alleged false representations were concerned, it becomes unnecessary to unduly prolong this opinion by narrating in detail the testimony given with relation to each of the 37 counts upon which appellants were adjudged guilty. It will suffice to epitomize the testimony as reflected by the record by saying that defendant Staver (against whom the indictment was dismissed) lived in Freeport, Illinois, where he was well and favorably known in the real estate business. He was also a director and vice-president of the State Bank of Winslow, Illinois. That appellants and defendant Staver were negotiating for the opening of a building material operation in Southern California is evidenced by a letter written by Staver on the bank's stationery, dated April 7, 1948, and addressed to appellant Whitmer at Glendale, Los Angeles County, California, reading in part as follows:

"I have had several meetings with the various members of the Staver family, together with some of my Chicago asso-

ciates, and they have approved the program of opening up thirty building material yards in the Los Angeles area for the Staver Building Material Company.

"We are pleased that you think well of the Associate Manager plan, and you are hereby authorized to proceed along the lines suggested, and I am enclosing a lease properly executed on the home office located at 2560 Glendale Boulevard, Los Angeles. I am also enclosing Power of Attorneys so that you can have the proper persons function during my absence. . . ."

By the terms of the power of attorney referred to in the letter, Staver designed appellant Stinson and Florence G. Whitmer (wife of appellant Whitmer) as attorneys in fact to act for him in his name. Among the powers designated are the following: ". . . and to do all things necessary and required of the Building Material Business known as Staver Building Material Co., with the principal office located at and doing business at 2560 Glendale Boulevard in the City of Los Angeles, State of California."

Said power of attorney was recorded in Los Angeles County and a certificate of fictitious name was filed and published to the effect that said Staver was the owner of a business known as Staver Building Material Company.

Thereafter, the following advertisement appeared in a Los Angeles daily newspaper:

"A CHALLENGE

"Where can you invest $10,000 with Services, with minimum return of $5200 yearly & % of profits without jeopardizing your capital? We eliminate risk, assured profits. Permanent managership available. Experience unnecessary, but you must be 100% O.K. Address Box T-7660 . . ."

The plan of action on the part of appellants is contained in a résumé of the testimony of Louis R. Petrucci, the alleged victim in Counts 1, 16, 17, 18, 19 and 20. This witness answered the aforesaid newspaper advertisement and received a reply to his letter. He contacted appellant Stinson at 2560 Glendale Boulevard in Los Angeles County. This was in June, 1948. Appellant Stinson told him that they proposed to open 30 stores in Los Angeles and vicinity; that a Mr. Staver from Chicago was going to be the backer; that for the initial investment they would match it dollar for dollar. Two or three days later, Mr. Petrucci was introduced to appellant Whitmer. The conversation at this time was just a résumé of what was said at the first meeting, namely, that Mr. Staver

was to match Mr. Petrucci's investment dollar for dollar; that Mr. Staver was well known in Chicago; that he was the original Staver who had been connected with the Staver-Studebaker Company; that later the Studebaker people bought out Staver; that the money Petrucci was to put in was to go for materials that were to be given to him; that the money which Mr. Staver was to put in to match the investor's money dollar for dollar was to be used for the buying of material and equipment, or whatever was needed to operate the store; that for the $10,000 which he (Petrucci) invested he was to get 10,000 shares of stock in a corporation already started to be formed and which would be completed in the near future as he and Mr. Staver were to meet in Denver and go to Nevada and start proceedings to have the stock "initiated."

Mr. Petrucci signed a contract similar in form to those signed by the other investors. By its terms he paid the sum of $10,000 and the Staver Building Material Company agreed to set up for operation a building material and supply business or yard, and "to furnish a man experienced in the building material and supply trade for the purpose of teaching and instructing the party of the second part in the usual practices pertaining to the operation and management of the business . . ." Mr. Petrucci was granted the right and privilege to operate under the registered name of Staver Building Material Company and was to be paid for his services as manager of said business, the sum of $100 per week, and to receive in addition thereto, "a 50 per cent share of all the net profits accruing from the operation of said enterprise . . . , and a further commission or bonus of 10 per cent of the net profits on all carload sales and/or carlot business secured by him or emanating from the yard under his management."

It was further agreed that the parties to the contract, "mutually agree and covenant to form a corporation at a subsequent date," at which time Mr. Petrucci was to "assign all of his interest in the said building material and yard . . . to the proposed corporation in consideration of said corporation issuing to him its fully paid and non-assessable stock based upon inventory value of the said yard at the time of issuance of said stock."

Mr. Petrucci paid in all the sum of $20,000. As to the total amount of money obtained by appellants there was testimony by C. B. Flowers, Auditor of the Division of Corporations of the State of California, that he examined the books of the

Staver Building Material Company and believed that the item appearing in the financial statement as "Net invested capital, P. W. Staver, $174,500.00" was the correct figure of the money invested by the various investors. He also testified that appellant Stinson received as salary, traveling expenses and commissions the sum of $6,370.57, and that appellant Whitmer received the sum of $5,012.73. That the store managers (investors) received in salary and expenses the sum of $30,044.95.

The enterprise lasted less than a year when it wound up in the bankruptcy court.

With few exceptions, the investors testified that appellants represented to them that Mr. Staver would put up dollar for dollar for every dollar said investors put into the company, and that they believed such representation and had it not been made they would not have parted with their money. Other investors testified that no direct representation was made to them as to the amount that Staver would invest in the enterprise.

Testifying as a witness for the prosecution, Staver stated that he made a financial contribution of $4,200 to the enterprise.

As a first ground for reversal, appellants urge that the evidence is insufficient to establish the crime of grand theft. In this regard it is contended that before a representation can be regarded as sufficient to establish the crime of grand theft it must relate either to an existing or past fact. That in each instance the only representation made to the complaining witness was that Mr. Staver *would* either match dollar for dollar or *would* put money into the enterprise in the future.

It is elemental that ". . . A false pretense is such a fraudulent representation of an existing or past fact, by one who knows it not to be true, as is adapted to induce the person to whom it is made to part with something of value." (12 Cal. Jur. pp. 452.) Appellants rely on *People* v. *Wasservogle,* 77 Cal. 173 [19 P. 270] ; *People* v. *Walker,* 76 Cal.App. 192 [244 P. 94] ; *People* v. *Moore,* 82 Cal.App. 739 [256 P. 266] ; *People* v. *Robinson,* 107 Cal.App. 211 [290 P. 470], and *People* v. *Reese,* 136 Cal.App. 657 [29 P.2d 450], all of which undoubtedly enunciate the foregoing principle of law.

However, though it be conceded that the representation as to what Mr. Staver *would* do, might not of itself be sufficient to sustain the charges of grand theft, it tends strongly to establish the fraudulent intent necessary to constitute the crimes. And it is not necessary to prove that the false

representations made were the sole inducing cause of the owner's parting with his money or property (*People* v. *Chait*, 69 Cal.App.2d 503, 514 [159 P.2d 445]). The circumstantial background against which the various contracts made by appellants were projected must not be overlooked (*People* v. *Jackson*, 24 Cal.App.2d 182, 201 [74 P.2d 1085]).

Regarding appellants' contention that the representation concerning Mr. Staver's investment related exclusively to the future and hence could amount to nothing more than a mere prediction or expression of opinion, we deem it proper to say that in effect these representations were that if the persons to whom they were made would sign the aforesaid contracts and make an investment of $10,000 or more, such persons would derive certain definite returns, such as salaries payable monthly, stipulated bonuses, etc., all made possible, according to appellants' representations by the matching of such investments dollar for dollar by Mr. Staver. The falsity of representations and their fraudulent character may be inferred from all the evidence considered in its entirety. ▪ And ". . . The form of words in which the pretense is couched is immaterial; if they are intended to create and do create the impression that defendant is making a representation as to a present or past fact, the pretense is within the statute" (25 C.J. 610). Fraud sometimes consists in asserting pretended beliefs and opinions for the purpose of deceiving. ▪ "It is a false pretense to take the property of another by force of an opinion asserted in bad faith and with a design to mislead." (*People* v. *Gordon*, 71 Cal.App.2d 606, 626 [163 P.2d 110].)

In *People* v. *Jones*, 36 Cal.2d 373, 377 [224 P.2d 353], it is said: ". . . So pertinent to the establishment of defendant's guilt in proof of his commission of the crime of grand theft 'sounding in false pretenses' are these considerations: (1) whether there were representations of past events or existing facts as distinguished from a mere expression of opinion or promise of future action (citing authorities), though a promise, if unconditional and made without present intention of performance, will constitute actionable fraud (citing authorities); (2) whether the representations were made with intent to defraud the owner of his property (citing authorities); and (3) whether the owner was actually defrauded in that he parted with his property—both possession and title—in reliance upon the false representations (citing authorities)."

Bearing in mind, as heretofore noted, that the circumstantial background against which the complaining witnesses in the case at bar parted with their money should not be overlooked, and since the falsity of the representations and their fraudulent character may be inferred from all the evidence in the case, we are persuaded that a review of the evidence herein depicts a well laid plan and scheme to obtain money by false pretenses and representations through the device of the fictitious firm name of Staver Building Material Company, which appellants represented would later be incorporated.

A reading of the record herein discloses that appellants utilized a uniform plan or formula in their representations to prospective investors. They painted a word picture of Mr. Staver as a man of outstanding integrity, ability and financial rating. They selected Southern California as the field for their activity. To give their plan and scheme a legitimate appearance, appellants leased a combination office and warehouse at 2560 Glendale Boulevard, in Los Angeles County, where prospective investors were interviewed. These ''prospects'' were obtained through an advertisement (heretofore set forth) in Los Angeles daily newspapers, in which the readers thereof were assured that they would obtain property without risk and without jeopardizing their capital, with a yearly return of $5,200 as managers, provided they had $10,000 to invest.

To all who answered such advertisements the same general inducing statements were made, viz., that the Staver Building Material Company was going to open up a chain of building material stores and wanted a manager for each store who could invest $10,000; that the manager would receive a weekly salary of $100 and 50 per cent of its net profits; that a corporation would be formed and each manager would receive shares or certificates of stock in the corporation according to the amount that he invested; that each store would be stocked with at least $10,000 worth of merchandise and that Mr. Staver would match each investor's money dollar for dollar. When asked who Mr. Staver was, appellants said that he was from a very wealthy fine old family in Freeport, Illinois, which at one time operated the Staver Wagon Company and later was connected with Staver-Studebaker Company; that the Staver family was going to invade California with a chain of 30 stores and that Mr. Staver could finance the business up to whatever was necessary,

could write his check for a quarter of a million dollars and even more than that, if it took that to put over the building material operation, but thought it best to have managers invest $10,000 each and in that way the managers would try to build up the business.

It cannot be denied that the representations made by appellants that the Staver family was very wealthy and that Mr. Staver could write his check for a quarter of a million dollars or more, were representations of a present fact. When these representations are considered in connection with the further representation made by appellants that Mr. Staver *would* match the investors' money dollar for dollar, then this later representation also became a representation of a present fact. If this were not so, then how could Mr. Staver put over the building material operation successfully, as represented by appellants, unless he presently matched the investors' money dollar for dollar if, as also represented, each store was to be stocked with at least $10,000 worth of merchandise?

Mr. Staver testified that such representations were not authorized by him. That only through the aforesaid power of attorney did he give appellants authority to represent his financial worth and that he had no recollection of ever authorizing them to represent to any person that he would match such person's investment dollar for dollar in the Staver Building Material Company. And, the power of attorney is bereft of any such authorization. Concerning his financial worth, Mr. Staver testified that all the money he contributed to the enterprise was approximately $4,200. When two of the investors called upon him at Freeport, Illinois, informing him of the precarious financial condition of the company and asked him if he would do something about it because he "was supposed to be the backer of the company," Mr. Staver stated that he "was in no position to do anything."

That Mr. Staver was in no position to finance the "invasion" of California with a chain of 30 building material stores and that all of the representations made by appellants as to Mr. Staver's financial worth were false, is further established by the financial statement which appellant Whitmer ordered prepared and submitted to the managers at the February meeting and which showed an investment in the business by P. B. Staver of $174,500. When this item was discussed at the meeting, appellant Whitmer falsely stated

that this was money that Mr. Staver had put in and that the managers hadn't put in any money.

 While it has been held that a false representation must relate to a past or present fact to support a conviction, it is also established that one who promises to do an act when at the time he makes such promise the promisor entertains a present intention of not performing his contract, is guilty of perpetrating a fraud (*People* v. *Mason*, 86 Cal. App.2d 445, 449 [195 P.2d 60]). Appellants' statements to the complaining witnesses that the Staver Building Material Company was going to open up a chain of 30 building material stores was an implied representation that the company was financed for extensive operations.

 The record in this case, disclosing as it does a course of conduct on the part of appellants teeming with fraud and replete with intrigue, deception and duplicity, coupled with the authorities herein cited, dissipates any reasonable doubt of appellants' guilt of the charges of grand theft upon which they were convicted.

It is next contended by appellants that the evidence is insufficient to sustain their conviction on Counts 4, 8, 11, 15, 20, 25, 32 and 43, each of which charged a violation of the Corporate Securities Act.

As stated by appellants, each of the counts involving a violation of the Corporate Securities Act is practically a repetition of the allegations of Count 4 of the indictment, in which the charging part thereof alleges that appellants did "willfully, unlawfully, feloniously and knowingly, sell and issue and cause to be sold and issued for value, to BURTON S. BELESS, a security, to wit: shares of stock in a corporation to be organized for profit, without first having applied for and secured from the Commissioner of Corporations of the State of California, a permit so to do."

The foregoing counts involving the Corporate Securities Act are grounded on the agreements that appellants signed as agents in fact for Staver with each investor-manager who came into the enterprise. There are two classes of agreements involved in the various counts. One class of agreement and that involved in Count 4 of the indictment provides in general terms that in consideration of the sum of six thousand ($6,000) dollars Staver Building Company, an organization with its principal office and place of business in the city of Los Angeles, agreed to set up a building material outlet containing a stock of materials and supplies

sufficient for operation thereof, and that the company would at all times use its purchasing power and employ its best efforts to furnish all materials and supplies ordered by the manager at the lowest possible market price. The agreement also provided that the manager should receive fifty-two hundred ($5,200) dollars a year in salary, at the rate of one hundred dollars per week and that he should have a fifty (50%) per cent interest in the profits of his particular store, the other fifty (50%) per cent going to Staver Building Material Company.

This agreement contains the following language relating to a corporate setup:

"The parties hereto mutually agree and covenant to form a corporation at a subsequent date and in consideration of the mutual covenants and agreements herein contained, the party of the second part hereby agrees to assign all of his interest in the said building material and supply yard at 2560 Glendale Blvd., in the City of Los Angeles, County of Los Angeles, State of California, to the proposed Corporation in consideration of said Corporation issuing to him its fully paid and non-assessable stock in an amount based upon inventory value of the said yard at the time of issuance of the stock. Subject to ratification by the Corporation, no assignor, or manager shall receive more than $100.00 per week remuneration, plus commissions and bonuses, unless authorized by the Board of Directors of said company."

The next general form of agreement is that involved in one transaction which is set forth in Count 25 of the indictment. This agreement is practically identical with the one discussed above except that it contains no language with regard to the formation of a corporation and the issuance of stock; it does however, contain the other provisions relative to the management agreement, division of profits, and the one hundred ($100) dollar a week salary.

With commendable fairness, the attorney general concedes that insofar as the agreements provided that the investors contracted to render personal services and to reap a profit from their own services or other active participation in the business venture, the contracts under the authority of *People* v. *Syde,* 37 Cal.2d 765, 768 [235 P.2d 601], and *People* v. *Gould,* 37 Cal.2d 885 [235 P.2d 604], cannot be considered as a security. However, the attorney general urges that notwithstanding the holding in the Syde and Gould cases, *supra,* the convictions must be sustained because the agree-

ments in evidence constituted preorganization subscriptions for stock.

It is not the taking of subscriptions for shares of a domestic or foreign corporation made prior to the inception thereof that is prohibited (Corp. Code, § 25153). What is prohibited by the section is the collection of any portion of the consideration to be paid on account of subscriptions made prior to incorporation, unless a permit has been issued by the commissioner authorizing such collections.

Here we are confronted with a situation wherein the agreement of the contracting parties was that they would form a corporation in the future, and that when such corporation was organized the manager of each store being operated by the Staver Building Material Company would take stock in the corporation based upon the inventory value of his business and other considerations. It cannot be assumed in a criminal prosecution that any stock would be issued without the permission of the Commissioner of Corporations. We fail to perceive wherein the agreements here in question can be regarded as a collection of a consideration to be paid on account of subscriptions for stock made prior to such incorporation. There is a failure of proof to establish the facts and circumstances necessary to constitute the crime charged. And, the proof does not correspond with the allegations in the indictment which charge that appellants "did sell and issue and cause to be sold and issued for value to . . . a security, to wit, shares of stock in a corporation to be organized for profit without first having applied for and received . . . a permit so to do." The convictions on Counts 4, 8, 11, 15, 20, 25, 32 and 43 cannot be sustained.

Appellants challenge the sufficiency of the evidence to justify their conviction on Count 1 of the indictment which accused them of criminal conspiracy to cheat and defraud by criminal means, and to obtain money and property by false pretenses and through false promises with fraudulent intent not to perform such promises. Included in the 25 overt acts set forth in this count are allegations of false and fraudulent pretense, representations and promises made to prospective investors. As we have heretofore held, the guilt of appellants as to the substantive offenses of grand theft is well established. That there was agreement and accord between appellants and that the object of such agreement was the commission of unlawful acts is equally well estab-

lished. Cogently descriptive of the operations of the appellants in the case now engaging our attention is the language of the court in *People* v. *Gordon,* 71 Cal.App.2d 606, 627 [163 P.2d 110], wherein it is said: "So interrelated and harmonious were the operations of defendants as disclosed by the documents and the testimony of the vendees that, based solely upon them, honest deduction could not but reasonably have inferred their conscious collaboration with a definite purpose. In fact, so marked with perfidy was their behavior that no strain of conscience was requisite to an inference of the existence of a conscious criminal accord to conduct a campaign of wilful plunder. Their bold efforts to beguile the innocent rendered the latter impotent as against the artifices of trained minds and aggressive personalities. The conspirators were so resolved to break all sales resistance that no peace was allowed an investor until all of his savings had been taken away. Indeed, were they so constant of purpose that a sinister and malign influence fringes the border of every scene."

Finally, appellants assert error by the court in its rulings on the admissibility of certain evidence.

■ In this regard, appellants assign as error the ruling of the court relative to their offer of eight books and the carbon of checks and other material of the Staver company as an exhibit. The record reflects that the stated purpose of this offer was to put in evidence the audit made by Mr. Shields, the company's accountant. The audit in question was admitted in evidence as defendants' Exhibit "E" without objection. After the audit was admitted into evidence the purpose of the offer was accomplished. Appellants now urge that the testimony given by their auditor varied in many particulars from that given by Mr. Flowers, an auditor for the Commissioner of Corporations; that the testimony of both came from the same source, viz., the books offered in evidence. That by reason of the variance existing in the testimony of the two auditors, the appellants were entitled to have the books and records themselves introduced into evidence. But such was not the avowed purpose of appellants in the trial court, and they cannot prevail on appeal when they state a purpose different from that given at the time of their offer in the trial court (*People* v. *Monson,* 102 Cal.App.2d 308, 313 [227 P.2d 521]). Had the purpose of the offer of the original books and records been presented to the trial court in the form it is addressed to us, the ruling might have been different, but

the purpose of the offer, as stated to the trial court, was to secure the admission into evidence of a summary of the books and records as prepared by appellants' auditor. When the audit was admitted into evidence, the purpose of the offer of the books and records no longer existed.

Appellants assign as error the failure of the trial court to finally rule on the admissibility into evidence of certain proffered documents of the United States District Court in the bankruptcy proceeding affecting the Staver Building Material Company. In this regard it appears that as part of their defense appellants offered in evidence a photostatic copy of a judgment and decree of the United States District Court affirming the findings of the referee in bankruptcy and that the purpose of this offer was to show that it was there adjudicated that the transactions between the complaining witnesses and appellants were joint ventures or partnership arrangements, which would have a bearing on the counts charging violations of the Corporate Securities Act. The trial judge stated that he didn't think these documents were admissible, but marked them for identification (Defts. Exhs. "Q" and "R") pending a final ruling. Appellants state that the court failed to ever rule on the admissibility of these documents, but appellants do not point out in the record where their offer was renewed or that they later insisted upon such final ruling. Apparently, appellants were satisfied that the documents were inadmissible as being immaterial. ■ When the court reserves a ruling upon an objection, the defendant must later secure a ruling thereon or he will be presumed to have waived a ruling. (8 Cal.Jur. pp. 501, 502; *People* v. *Pratt,* 77 Cal.App. 2d 571, 578 [175 P.2d 888].) Furthermore, since the documents in question related only to the counts charging violation of the Corporate Securities Act, and a reversal of the conviction on these counts is being ordered, appellants were not prejudiced by the court's failure to rule.

For the foregoing reasons, the judgments and the order denying the motion for a new trial are reversed as to Counts 4, 8, 11, 15, 20, 25, 32, and 43. As to the remaining 29 counts the judgments and order denying the motion for a new trial are, and each is, affirmed.

Doran, J., and Drapeau, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 2, 1953.