[No. D048845. Fourth Dist., Div. One. Sept. 10, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN LEGUST UPSHER, Defendant and Appellant.

[No. D050640. Fourth Dist., Div. One. Sept. 10, 2007.]

In re STEVEN LEGUST UPSHER on Habeas Corpus.

COUNSEL

Craig C. Kling and Howard C. Cohen, under appointments by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Mary Jo Graves and Dane R. Gillette, Chief Assistant Attorneys General, Gary W. Schons, James D. Dutton, Scott C. Taylor and Melissa Mandel, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**O'ROURKE, J.**—A jury convicted Steven Legust Upsher of dissuading a witness with a prior conviction for the same offense (Pen. Code,[1] § 136.1, subd. (c)(3); count 1), attempting to dissuade a witness (§ 136.1, subd. (b)(1); count 2), and battery on a spouse, cohabitant, or person with whom a defendant has or has had a dating relationship (§ 243, subd. (e)(1); count 3). Upsher admitted allegations that his prior conviction for dissuading a witness constituted a serious felony (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)) and a strike under the "Three Strikes" law (§§ 667, subds. (b)–(i), 668, 1170.12). The court sentenced him to four years on count 1 (double the low term of two years), two years on count 2 stayed under section 654, and five years for having a prior strike conviction, for a total nine-year prison term.

On appeal, Upsher challenges his conviction under section 136.1, subdivision (c)(3), contending it constitutes a "sentencing enhancement provision," not a separate and distinct offense from the section 136.1, subdivision (b)(1) attempt offense. He alternatively contends his conviction on the count 2 offense under section 136.1, subdivision (b)(1) must be stricken as necessarily included in the count 1 offense. Upsher further contends insufficient evidence supports his conviction for battery against a significant other under section 243, subdivision (e)(1). In his petition for writ of habeas corpus, Upsher argues his counsel provided constitutionally ineffective assistance for reasons related to the above referenced contentions.[2]

We agree Upsher's conviction for attempting to dissuade a witness under section 136.1, subdivision (b)(1) must be reversed as necessarily included in the greater offense of section 136.1, subdivision (c)(3). We reject his remaining contentions, and deny the petition for writ of habeas corpus.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] We ordered Upsher's habeas corpus petition considered with the appeal and, for purposes of disposition, consolidate it with the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

In the early morning of November 6, 2005, Cruz Alfaro was at an ampm market on Oceanside Boulevard on his way home from his job as a security officer, when he heard screaming coming from a house across the street. Alfaro saw a woman, Natasha Teague, running quickly from the house in his direction screaming for help, with Upsher chasing after her. Alfaro watched as Teague fell on the ground in the middle of the street; when Upsher pulled her hair Alfaro screamed at Upsher to let her go. Teague got up and started running towards Alfaro. Upsher came after Alfaro, who had called 911, and began to scream at him, saying, "You want to be a hero, mother fucker? You're going to die." Upsher proceeded to chase Alfaro around his security vehicle telling him to hang up the phone because he was known by the FBI and the Oceanside Police Department. At some point, Upsher told Alfaro to mind his own business, saying, "It's none of your fucking business what I do to my girl." After Alfaro abandoned his call to 911, Upsher returned to the house and got into a car. Alfaro told Teague to get into the store. Upsher drove the car behind Alfaro's security vehicle and began to chase Alfaro's work partner, Alonso Resarias. Eventually, Upsher gave up chasing the men and left in his car.

Oceanside Police Officer Michael Kos responded to a call about the incident at approximately 4:30 a.m., and shortly afterwards arrived at the ampm, where he contacted Teague and eventually Alfaro and Upsher. Officer Kos already knew Upsher and that he lived at 656 Crouch Street, nearby the ampm market. Teague was visibly upset and appeared to have been crying, and she was holding a paper towel to her mouth, which was still bleeding. As Officer Kos was speaking to Teague, Upsher pulled up in his car and parked it in front of the ampm. Noticing his vehicle, Teague became very scared and immediately stood up and turned to leave toward Crouch Street. When Officer Kos told her to sit back down, she responded, "No, I don't want to get shot." Upsher exited his car and approached Teague and Officer Kos, who told him to sit down on the curb. After Alfaro identified Upsher to Officer Kos as the man chasing Teague, the officer arrested Upsher and placed him in the rear of his police car. As Upsher entered the car, he called out to Teague, "You're going to do me like this, Tecia." Teague did not testify at trial.

The parties stipulated that Upsher had previously been convicted of dissuading a witness, the same offense charged in the present case, and the trial court took judicial notice of certified copies of documents showing the prior conviction (*People v. Upsher* (Super. Ct. San Diego County, 1990, No. CRN18488)).

Upsher testified in his own defense. He admitted he had been previously convicted of offenses in 1990, 1989 and 1993: respectively, dissuading a

witness in violation of section 136.1, subdivision (c)(1); assault by means likely to produce great bodily injury under section 245, subdivision (a)(1), and a federal offense for distributing cocaine base. Upsher recounted the events that morning; he was at home with Teague and Rochelle Ira, referring to Teague as "a lady friend of mine." According to Upsher, he, Teague and Ira had been up drinking alcohol all night, and the women remained awake drinking after he had gone to sleep about 2:00 a.m. Upsher testified that the altercation between him and Teague on the morning at issue began when he refused to let her and Ira drive after they had been drinking. Screaming and arguing occurred between Upsher and Teague for three or four minutes until Teague left the house. Upsher explained he left his house following Teague because she had car keys, and he walked into the middle of the street trying to talk her into giving him the keys, but she was screaming, hollering and crying. He was picking her up when Alfaro saw them and began yelling at them. According to Upsher, he told Alfaro, "Mind your own business. I'm trying to stop them from drinking and driving."

Upsher testified that when he saw Alfaro with his cell phone and heard him threaten to call 911, he tried to get back across the street: "So I'm trying to really get back across the street to my spot here. When I'm looking at these two grown men here, there's no way I'm trying to—try to charge at you all to try to fight with you, two grown men. I'm not concerned about you. I'm concerned about my girl right here trying to drive, trying killing herself [*sic*] or killing someone else. I'm concerned about getting back to my spot because my door is wide open, 4:30 in the morning."

Upsher testified that he returned to his house to put a shirt on, then got in his car to go looking for Teague. He went around the corner and pulled back into the ampm when he saw the police car. He explained that he pulled up because he knew he did not do anything wrong.

## DISCUSSION

### I. *Section 136.1, Subdivision (c)(3)*

Upsher contends we should vacate his conviction under section 136.1, subdivision (c)(3), because that statute sets forth a sentencing enhancement provision rather than a separate substantive offense. Citing *People v. Bouzas* (1991) 53 Cal.3d 467 [279 Cal.Rptr. 847, 807 P.2d 1076] and *People v. Pierson* (1969) 273 Cal.App.2d 130 [77 Cal.Rptr. 888], he maintains section 136.1, subdivision (c)(3) enhances the punishment for a violation of section 136.1, subdivision (b)(1), of which the offender has already been previously convicted. In his reply brief, Upsher makes a different argument: that the

section 136.1, subdivision (b) offense of count 2 must be stricken as a lesser included offense[3] of the section 136.1 offense of count 1.

## A. *Forfeiture*

■ We preliminarily address the People's argument that Upsher waived the claim of error under section 1012 because he did not file a demurrer to the information when on its face the offense was designated as a separate crime. To the extent Upsher's argument can be construed as an attack on the form of the indictment, i.e., that count 1 should have been alleged as an enhancement rather than a separate offense, we agree the defect was forfeited by his failure to demur on that ground. Objections to defects in the form of an accusatory pleading must be made by way of demurrer. (§ 1012; see also §§ 950, 952, 1004 [providing for specificity of pleading and grounds for objections].) When a defendant fails to demur, "the claimed defect in the information [is] waived." (*People v. Jennings* (1991) 53 Cal.3d 334, 356–357 [279 Cal.Rptr. 780, 807 P.2d 1009].) However, to the extent Upsher's contention is that the allegations of count 1 do not constitute a public offense (§ 1004, subd. 4), the defect is a matter of substance that may be raised despite his failure to file a demurrer. (*People v. Ross* (1894) 103 Cal. 425, 428 [37 P. 379]; *People v. Bliss* (1920) 47 Cal.App. 503, 504 [190 P. 1046]; *People v. Gann* (1968) 259 Cal.App.2d 706, 709 [66 Cal.Rptr. 508].)

■ We need not decide how to characterize Upsher's challenge, for in his reply brief, Upsher asserts that the section 136.1, subdivision (b) offense of count 2 is necessarily included in the section 136.1, subdivision (c) offense of count 1, and that it is permissible under section 954 for the People to allege both the greater and lesser offense, leaving no ground for demurrer. Section 954 provides that "[a]n accusatory pleading may charge . . . different statements of the same offense" and "the defendant may be convicted of any number of the offenses charged." (See *Stone v. Superior Court* (1982) 31 Cal.3d 503, 517 [183 Cal.Rptr. 647, 646 P.2d 809]; *People v. Grimes* (1959) 173 Cal.App.2d 248, 252 [343 P.2d 146].) We agree the People were entitled to allege both offenses, and reject the People's forfeiture argument because the information presented no basis for a demurrer. We proceed to the merits of Upsher's contentions.

## B. *Nature of Section 136.1, Subdivision (c)*

Section 136.1 provides in part: "(b) Except as provided in subdivision (c), every person who attempts to prevent or dissuade another person who has

---

[3] As does the California Supreme Court, we use the term " 'lesser included offense' " interchangeably with the equivalent term " 'necessarily included offense.' " (*People v. Medina* (2007) 41 Cal.4th 685, 690, fn. 2 [61 Cal.Rptr.3d 677].)

been the victim of a crime or who is a witness to a crime from doing any of the following is guilty of a public offense . . . [¶] (1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge. [¶] . . . [¶] (c) Every person doing any of the acts described in subdivision (a) or (b) knowingly and maliciously under any one or more of the following circumstances, is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years under any of the following circumstances: [¶] . . . [¶] (3) Where the act is committed by any person who has been convicted of any violation of this section, any predecessor law hereto or any federal statute or statute of any other state which, if the act prosecuted was committed in this state, would be a violation of this section. [¶] . . . [¶] (d) Every person attempting the commission of any act described in subdivisions (a), (b), and (c) is guilty of the offense attempted without regard to success or failure of the attempt. . . ."

 By arguing in reply that the count 2 offense of attempting to dissuade a witness (§ 136.1, subd. (b)) is necessarily included in the count 1 offense of knowingly and maliciously dissuading a witness, with a prior similar conviction (§ 136.1, subd. (c)), Upsher appears to have abandoned his initial argument that section 136.1, subdivision (c) merely sets out a sentencing enhancement provision, and not a substantive offense.[4] Accepting his modified position, we agree that the section 136.1, subdivision (b) attempt offense is necessarily included in the greater offense of section 136.1 subdivision (c), and that Upsher's conviction on the attempt offense under subdivision (b) must be stricken.

" 'Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. [Citations.]' [Citation.] In general, a defendant 'may be convicted of any number of the offenses charged' (§ 954), but section 654 prohibits multiple punishment. 'When section 954 permits multiple conviction, but section 654 prohibits multiple punishment, the trial court must stay execution of sentence on the convictions for which multiple punishment is prohibited. [Citations.]' [Citation.] However, an exception to this general rule allowing multiple convictions prohibits multiple convictions based on necessarily included offenses." (*People v. Medina, supra,* 41 Cal.4th at p. 701.)

---

[4] We understand this argument to be different from the argument Upsher makes in his habeas corpus petition, which is that the requirement of proving a prior conviction in section 136.1, subdivision (c)(3) is a sentencing factor, not an element of the section 136.1, subdivision (c) offense. (See pt. III.A., *post.*)

■ California courts have applied two tests to determine whether an uncharged offense is necessarily included within a charged offense: "the 'elements' test and the 'accusatory pleading' test. Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former." (*People v. Reed* (2006) 38 Cal.4th 1224, 1227–1228 [45 Cal.Rptr.3d 353, 137 P.3d 184].) When deciding whether a defendant may be convicted of multiple charges however, the accusatory pleading test does not apply. (*Id.* at p. 1231 ["Courts should consider the statutory elements and accusatory pleading in deciding whether a defendant received notice, and therefore may be convicted, of an *uncharged* crime, but only the statutory elements in deciding whether a defendant may be convicted of multiple *charged* crimes"].)

■ Section 136.1 criminalizes trying to dissuade a victim from reporting a crime. "By its terms, section 136.1, subdivision (b), provides for alternative felony-misdemeanor punishment, as it is punishable 'by imprisonment in a county jail for not more than one year or in the state prison.' This is classic 'wobbler' language. A wobbler offense charged as a felony is regarded as a felony for all purposes until imposition of sentence or judgment. [Citations.] If state prison is imposed, the offense remains a felony; if a misdemeanor sentence is imposed, the offense is thereafter deemed a misdemeanor. [Citations.] Effective 1998, subdivisions (a) and (b) were revised from straight misdemeanor status to provide for alternative felony-misdemeanor punishment." (*People v. McElroy* (2005) 126 Cal.App.4th 874, 880 [24 Cal.Rptr.3d 439], fn. omitted; see 2 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against Governmental Authority, § 6, p. 1089.)

To prove a violation of section 136.1, subdivision (b)(1), the prosecution must show (1) the defendant has attempted to prevent or dissuade a person (2) who is a victim or witness to a crime (3) from making any report of his or her victimization to any peace officer or other designated officials. Section 136.1, subdivision (b)(1) does not require that the defendant act knowingly and maliciously. (*People v. McElroy, supra,* 126 Cal.App.4th at p. 881.) Section 136.1, subdivision (c)(3) makes the offense in subdivision (b)(1) a felony where the person undertakes the acts of dissuasion knowingly and maliciously, and "[w]here the act is committed by any person who has been convicted of any violation of this section . . . ." (§ 136.1, subd. (c)(3).)

It is plain from the language of the two subdivisions that a violation under section 136.1, subdivision (c)(3) includes all of the elements of the violation of section 136.1, subdivision (b)(1), with the additional requirement that the defendant act "knowingly and maliciously." (Accord, *People v. Brenner* (1992) 5 Cal.App.4th 335, 340–341 [7 Cal.Rptr.2d 260].)[5] Thus, the greater offense cannot be committed without also committing the lesser offense. (*People v. Birks* (1998) 19 Cal.4th 108, 117 [77 Cal.Rptr.2d 848, 960 P.2d 1073]; see also *People v. Moon* (2005) 37 Cal.4th 1, 25–26 [32 Cal.Rptr.3d 894, 117 P.3d 591].) Under these circumstances, we reverse Upsher's conviction on count 2 and direct the trial court to strike the stayed term imposed for that conviction.

II. *Substantial Evidence Supports Upsher's Conviction for Battery Against a Significant Other Under Section 243, Subdivision (e)(1)*

Upsher contends there is insufficient evidence to support his conviction under section 243, subdivision (e)(1)[6] because there is no evidence to support a conclusion that he and Teague had a dating relationship or the sort of frequent intimate association that would support such an offense. He argues that his references to Teague at trial as "my girl" or his "lady friend," without any further evidence, do not permit an inference of a dating relationship. In particular, he points out there was no evidence as to the duration of his relationship with Teague or what they expected of one another.

"In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial

---

[5] *People v. Brenner, supra*, 5 Cal.App.4th 335 dealt with section 136.1 before a 1998 amendment changed subdivisions (a) and (b) from misdemeanors to wobblers and the court thus referred to the subdivision (b)(1) offense as a "misdemeanor offense" and the subdivision (c) offense as a "felony offense." (*Brenner*, at p. 341; see *People v. McElroy, supra*, 126 Cal.App.4th at pp. 880–881.) Though we disregard *Brenner*'s characterizations of the statutes, their elements are the same and thus the amendment does not impact our greater and lesser offense analysis.

[6] Section 243, subdivision (e)(1) provides in part: "When a battery is committed against a spouse, a person with whom the defendant is cohabiting, a person who is the parent of the defendant's child, former spouse, fiance, or fiancee, or a person with whom the defendant currently has, or has previously had, a dating or engagement relationship, the battery is punishable by a fine not exceeding two thousand dollars ($2,000), or by imprisonment in a county jail for a period of not more than one year, or by both that fine and imprisonment." Section 243, subdivision (f) defines " 'Dating relationship' " as meaning "frequent, intimate associations primarily characterized by the expectation of affectional or sexual involvement independent of financial considerations." (§ 243, subd. (f)(10).)

evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.] The same standard applies when the conviction rests primarily on circumstantial evidence. [Citation.] Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.] ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*People v. Kraft* (2000) 23 Cal.4th 978, 1053–1054 [99 Cal.Rptr.2d 1, 5 P.3d 68].) In making our determination, we focus on the whole record, not isolated bits of evidence. (*People v. Slaughter* (2002) 27 Cal.4th 1187, 1203 [120 Cal.Rptr.2d 477, 47 P.3d 262].) We do not reweigh the evidence; the credibility of witnesses and the weight to be accorded to the evidence are matters exclusively within the province of the trier of fact. (*People v. Stewart* (2000) 77 Cal.App.4th 785, 790 [91 Cal.Rptr.2d 888].) We will not reverse unless it clearly appears that on no hypothesis whatever is there sufficient substantial evidence to support the jury's verdict. (*People v. Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321]; see also *People v. Stewart*, at p. 790.)

■ In *People v. Rucker* (2005) 126 Cal.App.4th 1107 [25 Cal.Rptr.3d 62], this court addressed whether the defendant was in a "dating relationship" with the victim for purposes of determining whether a prior incident involved domestic violence within the meaning of Evidence Code section 1109. (126 Cal.App.4th at p. 1110.) Observing that the Legislature's definition of "dating relationship" found in the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.) was identical to the same term at issue here in Penal Code section 243, subd. (f)(10), we held the "definition of a dating relationship adopted by the Legislature does not require 'serious courtship,' an 'increasingly exclusive interest,' 'shared expectation of growth,' or that the relationship endures for a length of time. [Citation.] The statutory definition requires 'frequent, intimate associations,' a definition that does not preclude a relatively new dating relationship. The Legislature was entitled to conclude the domestic violence statutes should apply to a range of dating relationships. The Legislature could reasonably conclude dating relationships, even when new, have unique emotional and privacy aspects that do not exist in other social or business relationships and those aspects may lead to domestic violence early in a relationship. An individual who engages in domestic

violence may have a pattern of abuse that carries over from short-term relationship to short-term relationship." (*People v. Rucker*, 126 Cal.App.4th at p. 1116.) We further concluded that under the statutory definition, a " 'dating relationship' does not include 'a casual relationship or an ordinary fraternization between [two] individuals in a business or social context' . . . ." (*Id.* at p. 1117, fn. omitted.)

While concededly the question here depends largely upon inferences, we conclude substantial evidence in the record supports the jury's finding that Upsher's relationship with Teague was a dating relationship within the meaning of the statutory definition, and not merely a casual social relationship. Teague was in Upsher's house at 4:30 a.m. when the incident occurred. When confronted by Alfaro during his altercation with Teague, Upsher warned Alfaro that he should "mind his own fucking business," permitting the jury to reasonably infer that the matters between Upsher and Teague were private, personal matters, not events between social acquaintances in an ordinary context. Both Upsher and Teague were highly emotional, with Teague screaming and Upsher shouting obscenities, as reflected in the 911 call played to the jury in the People's case-in-chief. Officer Kos testified that Upsher called out to Teague using a nickname, "You're going to do me like this, Tecia," indicating familiarity between the two and Upsher's feeling of betrayal. Upsher alternatively referred to Teague as "my lady friend" and "my girl," throughout his testimony, both on direct and on cross-examination in his defense case, although he at one point called her "this lady," and denied she was his wife. During the prosecutor's questioning about seeing Alfaro on the phone, Upsher responded: "Yeah. Because he yelled at me when I first picked up my wife—I mean my girlfriend, a lady." At another point in his cross-examination, Upsher was shown a picture of Teague, and asked if he recognized her. He responded, "Yes. That's my girl. I talk to her every night. She write [*sic*] me everyday." His testimony provides some indication that the relationship with Teague was something more than a casual social relationship.

Other testimony by Upsher permits inferences supporting the jury's finding. On cross-examination, when asked about his statements to Alfaro to " 'Mind your own mother-fucking business,' " because "That's my girl," Upsher proceeded to explain he had already been in trouble with the police and did not want to return to jail: "I'm already scared because you don't call the police because I got a prior in domestic violence. I got a prior. I'm scared, because I'm thinking when the police pull up, *here come the shit again in my life*. That's why I'm scared if this is how the tone—I'm trying to talk to them. [¶] You don't need to call the police and you did it anyway. I can't stop you from calling the police . . . . The only thing I'm concerned about this moment my girl out here is drunk and it's cold in the morning. I'm trying to stop her from drinking and driving." (Italics added.) The jury could reasonably infer

that Upsher became fearful when police arrived because his relationship with Teague was of sufficient intimacy that, if police concluded they were fighting, he might be facing another domestic violence charge.

As stated, to reverse a conviction for insufficiency of the evidence it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support it. (*People v. Stewart, supra*, 77 Cal.App.4th at p. 790.) We are not persuaded Upsher has made such a showing. In our view, the evidence recited above and the reasonable inferences that may be drawn from it were sufficient to permit a reasonable jury to conclude Teague and Upsher had enough of an emotional and affectional involvement to constitute a dating relationship within the meaning of section 243, subdivision (e)(1).

### III. *Upsher's Petition for Writ of Habeas Corpus*

Upsher contends his trial counsel, Robert L. James, provided constitutionally ineffective assistance by (1) not recognizing that the fact of a prior conviction in section 136.1, subdivision (c)(3) is a sentencing factor that serves to increase the penalty, not an element of the section 136.1, subdivision (c) offense and thus failing to take appropriate steps to bifurcate trial on the factor or "sanitize" it to eliminate reference to the nature of the prior offense; and (2) eliciting potentially inculpatory evidence and failing to move for acquittal on the section 243, subdivision (e)(1) offense at the close of the People's case. In support of his writ petition, Upsher has submitted the declaration of his present appellate counsel, who avers that Attorney James refused to provide a supporting declaration at Upsher's request, as well as the declaration of another defense counsel providing an expert opinion as to trial counsel's effectiveness.

"To prevail on a claim of ineffective assistance of counsel, defendant 'must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice.' " (*People v. Hart* (1999) 20 Cal.4th 546, 623 [85 Cal.Rptr.2d 132, 976 P.2d 683].) Prejudice occurs only if the record demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 694 [80 L.Ed.2d 674, 104 S.Ct. 2052]; see *People v. Lucero* (2000) 23 Cal.4th 692, 728 [97 Cal.Rptr.2d 871, 3 P.3d 248].) "A criminal defendant is entitled to 'a reasonably competent attorney acting as a diligent, conscientious advocate.' [Citation.] Although, as noted, trial counsel must be accorded wide latitude and discretion regarding trial tactics and strategy, 'the exercise of that discretion must be a reasonable and informed one in light of the facts and

options reasonably apparent to counsel at the time of trial, and founded upon reasonable investigation and preparation.' " (*In re Jones* (1996) 13 Cal.4th 552, 566 [54 Cal.Rptr.2d 52, 917 P.2d 1175], italics omitted.)

A reviewing court need not determine " 'whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' " (*In re Fields* (1990) 51 Cal.3d 1063, 1079 [275 Cal.Rptr. 384, 800 P.2d 862].) A defendant must affirmatively demonstrate prejudice; it is not sufficient for the defendant to show the error had some " 'conceivable effect' " on the outcome of the proceeding. (*People v. Ledesma* (1987) 43 Cal.3d 171, 217–218 [233 Cal.Rptr. 404, 729 P.2d 839].)

Our review is deferential, and we make every effort to avoid the distorting effects of hindsight and to evaluate counsel's conduct from counsel's perspective at the time. (*People v. Dennis* (1998) 17 Cal.4th 468, 540 [71 Cal.Rptr.2d 680, 950 P.2d 1035].) Appellate courts " ' "defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " [Citation.] "[W]e accord great deference to counsel's tactical decisions" [citation], and we have explained that "courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight" [citation]. "Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts." ' " (*People v. Stanley* (2006) 39 Cal.4th 913, 954 [47 Cal.Rptr.3d 420, 140 P.3d 736]; see also *People v. Weaver* (2001) 26 Cal.4th 876, 925 [111 Cal.Rptr.2d 2, 29 P.3d 103].)

A. *Treatment of Section 136.1, Subdivision (c)(3) Prior Conviction*

1. *Background*

The subject of how to handle the section 136.1, subdivision (c)(3) prior conviction arose pretrial, after Upsher's counsel confirmed he desired a bifurcated trial on Upsher's prior conviction allegations. The court inquired about section 136.1, subdivision (c)(3), stating, "That is an offense requiring that the People prove that your client has a prior conviction for 136.1[, subdivision] (c)(1)." Counsel responded, "Stipulate to that for a tactical measure—reasons, your honor."

During presentation of the People's case, counsel reiterated their stipulation that "the defendant . . . has been previously convicted of this same offense . . . dissuading a witness" and the court instructed the jury to "regard that fact as having been conclusively proved." The next day, one of the jurors submitted a question reading: "Judge Weber, could you clarify the agreed stipulation and its applicability to the individual or all of the current charges." With both counsel's approval, the court confirmed that the question related to Upsher's prior witness dissuading conviction, and answered the question: "Then let me just clarify that for you now. I would be talking about this in closing instructions as well. But, one of the essential elements of the crime charged in count 1 is that the defendant has previously been convicted of a violation of section 136.1[, subdivision] (c)(1) of the Penal Code. The stipulation that you heard therefore relates only to count 1 and only to that element of count 1. Essentially both sides agree that this defendant has previously been convicted of a violation of section 136.1[, subdivision] (c)(1) of the Penal Code."

During the jury instruction conference, counsel and the court treated the prior conviction for dissuading a witness under section 136.1, subdivision (c)(3) as an element of the offense.[7] During closing arguments, counsel referred to the prior conviction as an element in their closing statements.

### 2. *Claim of Ineffective Assistance Relating to Section 136.1, Subdivision (c)(3)*

Citing to the Bench Notes to CALCRIM No. 2622 of the Judicial Council of California Criminal Jury Instructions (2006–2007),[8] Upsher contends the factors recited in section 136.1, subdivision (c), including the defendant having suffered a prior conviction for witness dissuading, are sentencing factors that serve only to increase the sentence for felony dissuasion of a

---

[7] The court modified the jury instruction relating to the jury's consideration of a prior conviction (Judicial Council of Cal. Crim. Jury Instns. (2006) CALCRIM No. 316), so that the jury was not limited to considering the felony conviction only for purposes of evaluating credibility: "The court: The parenthetical word 'only' [in CALCRIM No. 316] should be taken out, because it says, 'If you find that a witness has been convicted of a felony, you may consider that fact only in evaluating the credibility.' Actually in this case that would be confusing because one of the priors is also an element of one of the crimes. So that should be taken out. And then the rest of it would need to be in its entirety."

[8] The Bench Notes to CALCRIM No. 2622 state in part: "[S]ubdivision (c) provides a higher punishment if a violation of either subdivision (a) or (b) is done 'knowingly and maliciously,' and one of the other listed sentencing factors is proved. . . . [¶] If the defendant is charged with one of the sentencing factors in Penal Code section 136.1(c), give CALCRIM No. 2623, *Intimidating a Witness: Sentencing Factors*. If the defendant is charged with the sentencing factor based on a prior conviction, the court must give both CALCRIM No. 2623 and CALCRIM No. 3100, *Prior Conviction: Nonbifurcated Trial*, unless the court has granted a bifurcated trial on the prior conviction or the defendant has stipulated to the conviction."

witness, not substantive elements of the offense. He argues his counsel's failure to recognize that the prior dissuasion conviction was not an element of the section 136.1, subdivision (c) offense led him to stipulate to the issue being presented to the jury, and to his acquiescence in the court's decision not to limit the effect of the prior convictions, which was " 'inherently prejudicial.' " Upsher maintains the only reasonable tactical decision by his counsel would have been to move to bifurcate the prior conviction allegation or alternatively ask the trial court to "sanitize" the prior felony (i.e., withhold information about the nature of the prior conviction from the jury) so as to permit its use for impeachment.

■ Upsher cites no decisional authority in his writ petition for the proposition that the recidivist aspect of section 136.1, subdivision (c)(3) is a sentencing factor as opposed to an element of the subdivision (c) felony offense. Nor is any authority for that specific proposition cited in the CALCRIM jury instructions, and we have found no reported authority on this precise question. Upsher suggests an analogy between section 136.1, subdivision (c)(3) and section 314 in his petition, but provides no meaningful explanation or analysis. He presumably also analogizes section 136.1, subdivision (c)(3) to section 666, addressed by cases cited in his opening appellate brief such as *People v. Bouzas, supra,* 53 Cal.3d 467, 478–479, in which the court held that the "prior conviction requirement of section 666 [petty theft with a prior theft-related conviction] is a sentencing matter for the trial court and not an 'element' of a section 666 'offense' that must be determined by a jury." (*Id.* at p. 478.) In *Bouzas,* the court found significant that "[s]ection 666 is . . . part of title 16 of the Penal Code, which is directed primarily to sentencing and punishment matters, to the exclusion of statutes defining substantive crimes." (*Bouzas,* 53 Cal.3d at p. 478.) It further observed the language of section 666 "is structured to enhance the punishment for violation of other defined crimes and not to define an offense in the first instance." (53 Cal.3d at p. 478.) Finally, the court noted that "a charge under section 666 merely puts a defendant on notice . . . that if he is convicted of the substantive offense and if the prior conviction and incarceration allegation of section 666 is admitted or found true, he faces enhanced punishment at the time of sentencing." (*Bouzas,* at p. 479.) Unlike section 666, section 136.1, subdivision (c) is not contained in the sentencing and punishment part of the Penal Code, and it is structured to require proof of an element in addition to those specified in subdivisions (a) and (b) of section 136.1, namely, that the defendant act "knowingly and maliciously." (§ 136.1, subd. (c).) Because the People must prove the additional element of knowing and malicious conduct in committing a violation of section 136.1,

subdivision (a) or (b), we cannot say a charge under subdivision (c)(3) is merely a notice provision as section 666 was found to be in *Bouzas.*[9]

We view Upsher's ineffective assistance claims in light of the absence of controlling case law, indulging as we must a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. (*People v. Makabali* (1993) 14 Cal.App.4th 847, 853 [18 Cal.Rptr.2d 72], quoting *Strickland v. Washington, supra,* 466 U.S. at p. 689.) An evaluation of counsel's performance does not depend, as an initial matter, on whether " 'a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases.' " (*In re Alvernaz* (1992) 2 Cal.4th 924, 937 [8 Cal.Rptr.2d 713, 830 P.2d 747], quoting *McMann v. Richardson* (1970) 397 U.S. 759, 771 [25 L.Ed.2d 763, 90 S.Ct. 1441].) That element of

---

[9] After completion of briefing in this matter, Upsher brought to our attention the recent decision in *People v. Muhammad* (2007) 153 Cal.App.4th 358 [62 Cal.Rptr.3d 788], in which Division Five of the First District Court of Appeal addressed a defendant's challenge to his convictions under several subdivisions of section 646.9, the stalking statute. (*Muhammad,* at p. 365.) The defendant was convicted of stalking (§ 646.9, subd. (a) (count 1)); stalking in violation of a restraining order (§ 646.9, subd. (b) (count 2)); stalking with a prior terrorist threat conviction (§ 646.9, subd. (c)(1) (count 3)); stalking with a prior felony stalking conviction (§ 646.9, subd. (c)(2) (count 4); and misdemeanor criminal contempt (§ 166, subd. (a)(4) (count 5)). (*Muhammad,* at p. 361.) On appeal, he sought reversal of his convictions on counts 1 through 3, contending subdivisions (a), (b), (c)(1) and (c)(2) of section 646.9 did not define separate substantive offenses, but one substantive offense of stalking in subdivision (a) with enhancements or alternative punishments for that offense in the remaining subdivisions. (*Muhammad,* at pp. 361, 365.) Relying in part on *People v. Wallace* (2003) 109 Cal.App.4th 1699 [1 Cal.Rptr.3d 324], *People v. Bright* (1996) 12 Cal.4th 652 [49 Cal.Rptr.2d 732, 909 P.2d 1354] (overruled in *People v. Seel* (2004) 34 Cal.4th 535, 550, fn. 6 [21 Cal.Rptr.3d 179, 100 P.3d 870]), and *Robert L. v. Superior Court* (2003) 30 Cal.4th 894 [135 Cal.Rptr.2d 30, 69 P.3d 951], the Court of Appeal concluded those subdivisions did not create separate offenses and were not enhancements, but were "penalty provisions" that provided for an alternative sentence: " 'The California Supreme Court has recognized . . . that statutory provisions which are not "enhancements" in the strict sense are nevertheless "penalty provisions" as opposed to substantive offenses where they are "separate from the underlying offense and do[] not set forth elements of the offense or a greater degree of the offense charged. [Citations.]" ' [Citations.] Phrased slightly differently, a penalty provision does not define a substantive offense, but ' " ' focus[es] on an element of the commission of the crime or the criminal history of the defendant which is not present for all such crimes and perpetrators and which justifies a higher penalty than that prescribed for the offenses themselves.' " ' " (*Muhammad,* at p. 367.) Section 136.1 is not comparable to section 646.9 in that subdivision (c)(3) of section 136.1 does not merely provide an alternative sentencing scheme for the section 136.1, subdivision (a) and (b) crimes on proof of the defendant's prior dissuasion conviction. Rather, as we have pointed out, subdivision (c) contains an additional intent element that the dissuasion be knowing and malicious. (§ 136.1, subd. (c).) Even if it were possible to characterize section 136.1, subdivision (c)(3)'s prior conviction aspect as a penalty provision like subdivisions (b), (c)(1) and (2) of section 646.9, it would not change our conclusion below about the unsettled state of the law for purposes of deciding Upsher's ineffective assistance of counsel claim.

deficient performance is established if the record demonstrates that counsel's performance fell below an objective standard of reasonableness under the prevailing norms of practice. (*Alvernaz,* at p. 937.)

These principles, and the unsettled state of the law concerning the nature of the subdivision (c)(3) prong of section 136.1, compel us to conclude Upsher's prior counsel did not render constitutionally ineffective assistance by treating Upsher's prior conviction as an element of the offense, and failing to either move to bifurcate or sanitize it so that the jury would not hear of the prior conviction. Our assessment of defense counsel's performance need not go further, for we conclude that even if counsel's conduct was deficient, Upsher has not shown prejudice as a result of the alleged deficiency.

Upsher is correct that evidence of a prior criminal conviction can be prejudicial. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404 [27 Cal.Rptr.2d 646, 867 P.2d 757]; *People v. Williams* (1988) 44 Cal.3d 883, 904 [245 Cal.Rptr. 336, 751 P.2d 395].) He contends that counsel's error "changed the dynamics" of the trial; he relies upon an accompanying declaration of Knut Johnson, a criminal defense attorney who averred that a competent counsel's decision and advice to Upsher about testifying at trial would have depended upon the court's rulings on bifurcation and sanitization of Upsher's dissuasion prior.[10] However, given the state of the evidence on dissuasion, we conclude that admission of the prior conviction was harmless. Upsher does not challenge the sufficiency of the evidence of his dissuading conviction under section 136.1, subdivision (c). Unlike *Bouzas, supra,* 53 Cal.3d 467, in which admission of the defendant's prior conviction was found to be prejudicial given the weak state of the evidence, this case presents substantial evidence of knowing and willful witness dissuading (as to both Alfaro and Teague) as well as battery on a significant other. There is no indication the jury considered the matter a close case or had difficulties in its verdict, which was reached after approximately 45 minutes of deliberations. Under these circumstances, it is not reasonably probable that a different outcome more favorable

---

[10] Attorney Johnson's declaration states: "As part of my counsel, the court's rulings on bifurcation and sanitization would have borne to a large degree on the advice I would have afforded a client. If the dissuasion prior had been bifurcated and sanitized, I would be more inclined to advise the petitioner to testify, depending on other ascertainable factors, e.g., how the People's evidence had developed and my professional judgment as to how petitioner would have presented himself as a witness. If the trial court had bifurcated the dissuasion prior but had refused to 'sanitize' it, my counsel to the client would have had to balance not placing him on the stand so as to preclude the jury from learning of the prior (a crucial tactical goal) or have had him testified [*sic*] and preserved the prejudicial denial of sanitization for appeal."

to Upsher would have resulted had the court excluded his prior conviction from the jury's consideration.

## B. *Eliciting Inculpatory Evidence/Failure to Move for Acquittal*

Upsher contends that his counsel was ineffective in unreasonably asking a question of Alfaro during Alfaro's cross-examination, asking Alfaro to describe "exactly" what Upsher had said to him about "minding his own business" and as a result, eliciting Alfaro's incriminating answer: "It's none of your business what I do to my girl." Upsher maintains there was no reasonable tactical purpose to have asked that question, which had little or no bearing on the felony dissuasion charge. He argues if his counsel knew the answer, it was unreasonable to ask, and if he did not know, there was too much to risk by asking the question. Upsher further maintains the ineffectiveness was prejudicial because it "could have been the necessary evidence by which the trial court could have denied a motion to acquit on the section 243, subdivision (e)(1) offense." To prevail on this latter point, Upsher must show the motion would have been successful. (E.g., *People v. Grant* (1988) 45 Cal.3d 829, 864–865 [248 Cal.Rptr. 444, 755 P.2d 894], citing *People v. Ledesma, supra,* 43 Cal.3d at pp. 215–218.)

In our view, the question posed to Alfaro by Upsher's defense counsel was not one a reasonably competent counsel would have known would elicit an incriminating response, and for that reason, we reject Upsher's claim of ineffective assistance. Nevertheless, we further conclude Upsher cannot show prejudice—a reasonable probability that absent counsel's question to Alfaro the jury would have reached a different result—in view of the other evidence summarized in part II., *ante.* He maintains that absent the "my girl" testimony, the only prosecution evidence supporting the section 243, subdivision (e)(1) offense was Officer Kos's testimony and Alfaro's subjective belief that Upsher and Teague were married, and that competent counsel would have moved for acquittal on that offense. We disagree. Even apart from Alfaro's recounting of Upsher's "my girl" comment and Upsher's testimony in his defense case, the jury could reasonably infer a dating relationship within the meaning of section 243, subdivision (c) from not only the evidence mentioned above, but the circumstances surrounding the incident, including the time of morning, the emotions involved, and Upsher's statements to Alfaro during the incident about minding his own business. Under the circumstances, we conclude there is no reasonable probability of a more favorable result to Upsher had his trial counsel avoided the question put to Alfaro.

## DISPOSITION

The judgment is reversed as to Upsher's count 2 conviction for attempting to dissuade a witness under Penal Code section 136.1, subdivision (b). In all other respects, the judgment is affirmed. The petition for writ of habeas corpus is denied.

McDonald, Acting P. J., and Irion, J., concurred.

A petition for a rehearing was denied October 4, 2007, and appellant's petition for review by the Supreme Court was denied January 16, 2008, S158034.