Filed 1/5/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B301970 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA074144) |
| v. | |
| CAMERON ROY COOK, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Lisa M. Chung, Judge.  Affirmed.

Justin Behravesh, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Jason Tran and Shezad H. Thakor, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Cameron Cook's mother called 911 to report that he was fighting with his brother. While she was on the phone with a dispatcher, Cook ripped the phone off the wall and threw it to the ground, which broke the phone and disconnected the call. A jury subsequently found Cook guilty of dissuading a witness from reporting a crime. On appeal, Cook contends there is insufficient evidence supporting the conviction. We disagree and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The evening of June 9, 2018, around 11:45 p.m., Cook was at home with his mother, Emmaline, as well as his father and brother.[1] Emmaline heard Cook and his brother arguing. Cook said he wanted to hit his brother, and Cook's father tried to step in to prevent a fight. Emmaline saw Cook inching closer to his brother, who was sitting down, and she believed Cook was about to attack him. At some point she heard Cook's father fall to the ground, and she assumed he had been pushed.

Emmaline called 911 using a landline telephone attached to a wall, which was about 20 feet from Cook. She told the dispatcher Cook was fighting her other son and "the last time the cops came they told me to call them when he's all cutting up, acting, doing some illegal stuff." Emmaline then provided her street address and full name.

While Emmaline was speaking with the dispatcher, Cook ripped the phone off the wall and threw it on the floor. The phone broke, which disconnected the call. The wire was no longer

---

[1] We refer to Emmaline Cook by her first name for the sake of clarity.

2

attached to the phone, and it appeared to have been torn or severed. Cook left the home before the police arrived.

Cook was charged by information with dissuading a witness from reporting a crime (Pen. Code, § 136.1, subd. (b)(1))[2] and battery on an elder or dependent adult (§ 243.25). At trial, Cook's father and Emmaline testified to the facts summarized above. Emmaline also testified that she called 911 from her cell phone immediately after Cook ripped the landline phone off the wall. According to Emmaline, Cook watched her make the call and then left. She did not believe Cook was trying to disrupt her from calling 911, and she described his actions as "merely a reaction."

The police officer who responded to Emmaline's disconnected call testified that he was aware of only a single 911 call. No other officers showed up at the house in response to a second call.

The jury found Cook guilty of dissuading a witness and not guilty of battery. The court sentenced him to the low term of 16 months in prison. Cook timely appealed.

## DISCUSSION

Cook's sole contention on appeal is that the evidence is insufficient to support his conviction for dissuading a witness. We disagree.

### A. Standard of Review

When an appellant challenges the sufficiency of evidence supporting a jury's verdict, the reviewing court examines whether there is substantial evidence, considered as a whole, to permit a reasonable trier of fact to find the defendant guilty of the charged

---

[2] All further statutory references are to the Penal Code.

3

crime beyond a reasonable doubt.  (*Jackson v. Virginia* (1979) 443 U.S. 307, 318–319; see *People v. Smith* (2014) 60 Cal.4th 603, 617; *People v. Lindberg* (2008) 45 Cal.4th 1, 27.)  The court's standard for determining what is "substantial evidence" is whether the evidence is "credible and of solid value."  (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

This standard of review applies to claims involving both direct and circumstantial evidence.  " 'We "must accept logical inferences that the jury might have drawn from the circumstantial evidence.  [Citation.]" [Citation.]  "Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt.  [Citation.]" [Citation.]  Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal.  [Citation.]' [Citation.]" (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

**B.  Analysis**

Cook argues his conviction must be overturned because there is insufficient evidence from which a reasonable juror could find he acted knowingly, maliciously, and with the requisite intent.  We are not persuaded.

Contrary to Cook's contentions, section 136.1, subdivision (b)(1) "does not require that the defendant act knowingly and maliciously."  (*People v. McElroy* (2005) 126 Cal.App.4th 874, 881; accord, *People v. Upsher* (2007) 155 Cal.App.4th 1311, 1320; see *People v. Brackins* (2019) 37 Cal.App.5th 56, 68 [section 136.1,

subdivision (b) does not have a malice element]; see also *People v. Torres* (2011) 198 Cal.App.4th 1131, 1138 ["[section 136.1], subdivision (b) offenses do not expressly include the mental element of knowingly and maliciously"].)  Instead, to "prove a violation of section 136.1, subdivision (b)(1), the prosecution must show (1) the defendant has attempted to prevent or dissuade a person (2) who is a victim or witness to a crime (3) from making any report of their victimization to any peace officer or other designated officials." (*People v. Upsher, supra*, 155 Cal.App.4th at p. 1320.)  The prosecution must also prove the defendant specifically intended that his acts would prevent or dissuade the victim or witness from making the report.  (*People v. Navarro* (2013) 212 Cal.App.4th 1336, 1347.)

Under section 136.1, subdivision (c), a violation of subdivision (b)(1) is subject to heightened penalties if the defendant acted "knowingly and maliciously" and committed the offense under additional specified circumstances.  (§ 136.1, subd. (c)(1), (2), (4).)  Those circumstances include, among other things, that the act was accompanied by force upon the witness, in furtherance of a conspiracy, or for pecuniary gain.  (§ 136.1, subd. (c)(1), (2), (4).)

Here, Cook was convicted of violating section 136.1, subdivision (b)(1); he was not charged with or convicted of violating section 136.1, subdivision (c).  The prosecutor, therefore, was not required to prove he acted knowingly and maliciously.  Accordingly, we decline to consider Cook's arguments related to

knowledge and malice, and will address only his arguments related to intent.[3]

Cook contends no reasonable juror could have found he acted with the requisite intent because there is no evidence showing he knew Emmaline was on the phone with a 911 dispatcher or that he intended to prevent her from speaking with the dispatcher. Contrary to Cook's claims, the record discloses substantial evidence supporting the jury's implicit findings on these issues.

According to the recording of the 911 call, Emmaline told the dispatcher that Cook was fighting and "the last time the cops came they told me to call them when he's all cutting up, acting, doing some illegal stuff." She then provided her full name and address. Anyone hearing such comments could reasonably infer Emmaline was speaking to a 911 dispatcher, especially in light of the fact that she made the call close to midnight and while her sons were in the midst of a heated argument.

---

[3] It appears Cook's confusion stems from the fact that the trial court instructed the jurors that to convict Cook, they had to find he acted maliciously, knowingly, and with specific intent. The court used a version of CALCRIM No. 2622 that gave trial courts discretion to include all three elements in the instruction, purportedly because an "argument can be made that the knowledge and malice requirements apply to all violations of Penal Code section 136.1(b), not just those charged with the additional sentencing factors under subdivision (c)." (See Bench Notes to CALCRIM No. 2622, approved April 2020.) The current version of the instruction omits the malice element as well as the above-quoted bench note.

Given Emmaline testified that Cook was approximately 20 feet away while she was on the phone, the jurors could have reasonably inferred he heard Emmaline and understood her to be speaking with a 911 dispatcher. The jurors also could have reasonably inferred that Cook intended to disrupt the call and prevent Emmaline from reporting a crime based on the evidence showing he ripped the phone off the wall and threw it to the ground. That the evidence may have supported alternative inferences does not require reversal. (*People v. Manibusan, supra*, 58 Cal.4th at p. 87.)

Cook insists no reasonable juror could have found he acted with the requisite intent because the evidence shows his actions were a "reaction" of "someone who was very upset and having an angry moment," rather than someone attempting to prevent his mother from reporting a crime. In support, Cook points to Emmaline's testimony that he was not trying to disrupt her, he looked "shocked" after he ripped the phone off the wall, and he did not attempt to prevent her from subsequently calling 911 on a cell phone.

Contrary to Cook's suggestions, jurors were free to disregard Emmaline's testimony on these points, and it would have been reasonable for them to do so. (See *People v. Allen* (1985) 165 Cal.App.3d 616, 623 ["a jury is entitled to reject some portions of a witness' testimony while accepting others"].) Emmaline is Cook's mother and had motivation to lie in order to protect him. Her testimony was also inconsistent with the responding officer's testimony that he was aware of only a single call to 911 and no other officers responded to the home.

7

We are similarly unpersuaded by Cook's suggestion that his lack of specific intent is evident from the fact that he did not touch the phone while it was on the ground.  According to Cook, had he intended to end Emmaline's call with the dispatcher, he would have checked the phone to see if it was still working.  The evidence, however, shows the phone was visibly broken and the wire had been severed.  A reasonable juror, therefore, could have concluded Cook did not check the phone because it was obvious that it was no longer in working condition.

## DISPOSITION

We affirm the judgment.

## CERTIFIED FOR PUBLICATION

BIGELOW, P. J.

WE CONCUR:

STRATTON, J.

WILEY, J.

8