Filed 4/14/25  In re A.V. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re A.V., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B335863 (Super. Ct. No. FJ57886) (Los Angeles County) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>A.V.,<br><br>    Defendant and Appellant. | |

A.V. appeals from the jurisdictional and dispositional orders entered after the juvenile court sustained a petition alleging he committed battery on a person with whom he was in a dating relationship (Welf. & Inst. Code, § 602; Pen. Code,[1] § 243, subd. (e)(1)), declared him a ward of the court, and ordered him placed at home on probation.  A.V. contends: (1) there was

---

[1] Unlabeled statutory references are to the Penal Code.

insufficient evidence he was in a dating relationship with the victim, and (2) the probation condition barring him from using drugs or alcohol is overbroad and/or constitutes cruel and unusual punishment.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

In May 2022, W.V. lived with her grandfather M.V. in Whitter.  One afternoon W.V. yelled, "Grandpa, help me, help me."  M.V. ran over and saw A.V. standing behind W.V. with his arms around her chest, squeezing her tightly.  He "had her embraced and . . . didn't let her breathe."  M.V. told A.V. to let W.V. go.  When he refused to do so, M.V. sought help from a neighbor.  The two were able to get A.V. to release W.V. after about two minutes.

The district attorney filed a Welfare and Institutions Code section 602 petition alleging that A.V. committed misdemeanor battery on W.V.  A.V. thereafter failed to appear at some early court dates.  His mother told the juvenile court that he had overdosed on drugs and was in a residential treatment program in Mexico.  The court wished A.V. "the best" and hoped the program would benefit him.

At a subsequent proceeding A.V.'s mother told the juvenile court that she was "nervous" about A.V.'s progress in rehabilitation because of "how badly" he had been using drugs.  The court twice checked on his progress in Mexico.  After the first check-in the court said that A.V. was making "fantastic" progress.  During the second a counselor told the court that A.V. was "doing very well."

After A.V. returned to the United States he relapsed on fentanyl and returned to rehabilitation in Mexico.  He later told the juvenile court that his relapse made him realize that recovery

2

was not easy and he needed meetings, a sponsor, and church. The court replied that it was "really proud of [A.V.] for going back [to treatment]." It said that recovery is "not a straight line" and "[s]ometimes it is one step up, two steps back. All that matters is that you pick yourself up and get back in the saddle again." The court then arranged for A.V. to start a new residential treatment program.

A.V. left that program and stopped going to addiction recovery meetings. At a hearing after A.V. turned 18, the juvenile court said it was concerned that he had had a serious drug problem. A.V. had gone "nowhere" despite two stints in rehabilitation programs. And he did not appear to be taking his rehabilitation seriously. The court said, "Your mom wants to support [you]. I want to support [you]. . . . [B]ut you got to do the work." The court ordered A.V. to attend Alcoholics Anonymous meetings and said it could order him to attend an inpatient or outpatient treatment program.

At a hearing two months later, A.V. admitted that he was still using drugs. The juvenile court commended A.V.'s honesty but said "[w]e got to do something."

> "Nothing to be ashamed about. It is an illness. It is just like having diabetes, heart disease[,] or anything else. I have plenty of people in my family [who] have substance abuse issues. It can take a long time. It took my brother three times in rehab to get it right.
>
> "So I get it. I understand. It is not . . . perfection. It is three steps up, two steps back but I gotta do something okay. You're a terrific young man. You have a lot to give. You're a young man. I don't want to see you throwing your life away."

The court suggested that A.V. enter a program called "Rights of Passage" in Lake Tahoe. A.V. agreed, and the court ordered him to be screened for that program. The program "didn't work out," however, and A.V. again stopped going to meetings.

The juvenile court subsequently held a hearing on the battery allegation against A.V. During the hearing M.V. testified that W.V. had been in a "dating relationship" with A.V. for two or three months. A.V. visited W.V. "a lot," nearly every day. M.V. deemed the two "boyfriend [and] girlfriend."

The juvenile court found the battery allegation true, declared A.V. a ward of the court, and ordered him placed at home on probation. As a condition of probation the court ordered A.V. not to "knowingly use any alcohol or drugs except with a doctor's prescription." The court also ordered A.V. to take withdrawal medication, attend substance abuse counseling, and attend meetings. It said that it was "open for [A.V.] to do [it] in any way [he] want[ed and] in the best way [he] want[ed]," and urged him and mother to think about what made the most sense for his situation.

## DISCUSSION

### Sufficiency of the evidence

A.V. contends the true finding on the battery allegation must be vacated because there was insufficient evidence he was in a dating relationship with W.V. We disagree.

A dating relationship need not be long term or exclusive, but must be more than " ' "a casual relationship or . . . ordinary fraternization between [two] individuals in a business or social context." ' " (*People v. Upsher* (2007) 155 Cal.App.4th 1311, 1322-1323 (*Upsher*).) Such a relationship is defined by "frequent, intimate associations primarily characterized by the expectation

4

of affectional or sexual involvement independent of financial considerations." (§ 243, subd. (f)(10).) "Frequent," in turn, is defined as "common, usual, happening at short intervals, or often repeated or occurring." (*M.A. v. B.F.* (2024) 99 Cal.App.5th 559, 570 (*M.A.*).) And "intimate" is defined as: "(1) very close physical, mental, or social association, connection, or contact[;] (2) a warmly personal attitude, especially one developing through a long or close association or by friendliness, unreserved communication, [or] mutual appreciation and interest[;] or (3) very close personal relationships, befitting a relationship of love, warm or ardent liking, deep friendship, or mutual cherishing." (*Id.* at pp. 570-571.)

To determine whether there was sufficient evidence that A.V. and W.V. were in a dating relationship, " 'we review the entire record in the light most favorable to the [juvenile court's findings] to determine whether it contains substantial evidence— that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could find' " that the two shared frequent, intimate associations. (*People v. Avila* (2009) 46 Cal.4th 680, 701 (*Avila*).) When undertaking our review, we neither evaluate witness credibility nor resolve evidentiary conflicts (*People v. Manibusan* (2013) 58 Cal.4th 40, 87); such tasks are within the exclusive province of the court below (*People v. Young* (2005) 34 Cal.4th 1149, 1181). We presume the existence of every fact the court could reasonably deduce from the evidence, and draw all reasonable inferences in favor of its findings. (*People v. Maciel* (2013) 57 Cal.4th 482, 515.) But it is immaterial whether we would have drawn those same inferences (*People v. Solomon* (2010) 49 Cal.4th 792, 811-812); so long as "the circumstances reasonably justify the [juvenile court's]

findings, reversal . . . is not warranted simply because the circumstances might also . . . be reconciled with" contrary ones. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

Reversal is unwarranted here. During the jurisdictional hearing M.V. testified that A.V. and W.V. were "boyfriend [and] girlfriend," in a "dating relationship." He said that A.V. visited his granddaughter at the family home almost daily, and had been doing so for two or three months when the battery occurred there. Those are the frequent, intimate associations indicative of a dating relationship. (*Upsher, supra*, 155 Cal.App.4th at p. 1323 [court could infer existence of "dating relationship" where defendant referred to victim as his " 'girl' " and " 'lady friend' " and battery occurred at his home].)

A.V.'s reliance on *M.A.* is misplaced. In that case our colleagues in the Fourth District upheld the trial court's finding that M.A. and B.F. lacked the frequent, intimate associations to be in a dating relationship. (*M.A., supra*, 99 Cal.App.5th at p. 577.) M.A. and B.F. saw each other a total of eight times over a period of 19 months. (*Id.* at p. 571.) And during the months-long lulls between meetings M.A. initiated most of the communications with B.F. and received no "amorous" replies from him. (*Id.* at pp. 571-572.)

Here, in contrast, M.V. testified that A.V. visited W.V. almost daily for two or three months. And their interactions were such that M.V.—who lived with his granddaughter and observed her relationship with A.V.—told the court he believed the two were "boyfriend [and] girlfriend." The court credited M.V.'s testimony. We accordingly conclude that substantial evidence supports the juvenile court's finding that A.V. and W.V. had the frequent, intimate associations required to be in a dating

6

relationship, and uphold its true finding on the battery allegation. (*Avila, supra,* 46 Cal.4th at p. 703 [testimony of single witness sufficient to prove any fact]; *People v. Farnam* (2002) 28 Cal.4th 107, 153 [lay witness may offer an opinion if it is rationally based on their perception and helpful to understanding their testimony].)

*Probation condition*

A.V. contends the probation condition barring him from using drugs or alcohol is constitutionally overbroad because it "requir[es] more of him that [*sic*] is humanly reasonable" and "is not necessarily an admonition that [he] is capable of heeding." We disagree.

This is not a case where the condition—to not knowingly use unprescribed drugs or alcohol—is vague as to what was prohibited or would require the probationer to " ' "guess at its meaning." ' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.) Nor is it overbroad because the prohibition of using unprescribed drugs or alcohol was "closely tailor[ed] . . . to the purpose of the condition," namely, eliminating A.V.'s substance abuse. (*Ibid.*) A.V. cites no authority for the proposition that a probation condition prohibiting knowing conduct is overbroad simply because it might prove difficult to follow. The contention is waived. (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620.)

Alternatively, A.V. contends the challenged probation condition constitutes cruel and unusual punishment. We disagree.

The Eighth Amendment to the U.S. Constitution proscribes the imposition of cruel and unusual punishments. In doing so, " '[t]he Amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency" . . . against

7

which we must evaluate penal measures.' " (*In re Coca* (1978) 85 Cal.App.3d 493, 502.)  Measures that " 'are incompatible with "the evolving standards of decency that mark the progress of a maturing society" ' " and those that " ' "involve the unnecessary and wanton infliction of pain" ' " are accordingly " 'repugnant to the Eighth Amendment.' " (*Ibid.*)

In *Estelle v. Gamble* (1976) 429 U.S. 97 at page 104, the U.S. Supreme Court held that "deliberate indifference to [the] serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' [citation] proscribed by the Eighth Amendment."  Relying on *Estelle*, A.V. argues the probation condition barring him from using drugs or alcohol constitutes cruel and unusual punishment given his status "as a drug addict and alcoholic."  He argues the condition must be stricken because "drug and alcohol addiction is not something that can simply be admonished away."

Assuming *Estelle* applies to probation conditions, we disagree with A.V.'s arguments.  During the proceedings below the juvenile court was sensitive to A.V.'s struggles with drug and alcohol addiction.  When A.V. missed some initial proceedings because he was in a drug treatment program in Mexico, the court wished him "the best" and said it hoped the program would benefit him.  It then checked in on his progress multiple times.  When he returned to the United States, the court commended A.V. for going through treatment.  It noted that addiction is an illness and that rehabilitation can take time; progress, not perfection, was the goal.

A.V. further argues the juvenile court's prohibition on using drugs or alcohol "fail[s] to take into consideration our evolving understanding [of] addiction as an illness . . . and the arduous

8

process of seeking sobriety." We are not persuaded. The record shows that the court understood A.V.'s addiction and the challenges to achieving sobriety. It also ordered A.V. to take withdrawal medication, attend substance abuse counseling, and attend meetings—efforts A.V. admits were "achievable" and "could have led to a foundation of sobriety." Such concern for A.V. and efforts to help him attain sobriety reinforce our conclusion that the court was dedicated to his success and not deliberately indifferent to his needs. The probation condition therefore does not constitute cruel and unusual punishment. There was no Eighth Amendment violation. (See *People v. Brooks* (2010) 182 Cal.App.4th 1348, 1353 [no Eighth Amendment violation where court prohibited defendant from using medical marijuana as condition of probation]; see also *People v. Mitchell* (1981) 125 Cal.App.3d 715, 719-720 [permissible to order alcoholic thief to maintain sobriety as condition of probation].)

DISPOSITION

The jurisdictional and dispositional orders, entered March 11, 2024, are affirmed.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

GILBERT, P. J.          CODY, J.

9

Melissa N. Widdifield, Judge

Superior Court County of Los Angeles

_____

Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.