Filed 10/7/13  In re Robert A. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ROBERT A., a Person Coming Under the Juvenile Court Law. | B247044 (Los Angeles County Super. Ct. No. TJ19575) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROBERT A.,<br><br>    Defendant and Appellant. | |

        APPEAL from an order of the Superior Court of Los Angeles County, Tamara Hall, Judge.  Reversed.

        Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Kenneth C. Byrne and Julie A. Harris, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant, Robert A., a minor, was declared a ward of the court and placed home on probation. On appeal, he contends the juvenile delinquency court erred in (1) finding that he had violated Penal Code section 288, subdivision (a) because sufficient evidence did not show that he had the specific sexual intent to commit the crime; and (2) setting a maximum period of physical confinement. As we shall explain, although sufficient evidence supports the conclusion that appellant injured the four-year-old victim and was guilty of a battery, the record does not support a true finding beyond a reasonable doubt that appellant had the requisite specific sexual intent to violate Penal Code section 288, subdivision (a). Accordingly, we reverse.

*FACTUAL AND PROCEDURAL HISTORY*

**Relationship between the Parties**

The families of the victim, R.G. (four years old at the time of the incident), and appellant (then age 13) socialized. The victim's older sister, S.W., and appellant had attended preschool together. The families' children[1] went to each other's homes and spent time together. According to R.G., he and his sister had spent the night at appellant's home on occasion.

**Events of July 16 Incident**

On July 16, 2011, at about 2:30 p.m., appellant and his family picked up R.G. and S.W. from their home and took them to the mall for about an hour. According to appellant and his family, while at the mall, R.G. was whiny and agitated. R.G. claimed to need to use the restroom, but then refused to go to the bathroom.

After leaving the mall, appellant's parents took the children to appellant's house. The children played inside the house while appellant's parents were in the kitchen. At some point, appellant's mother sent appellant's sister and R.G's sister outside to the front yard to play because the children were noisy and appellant's mother thought that R.G.

---

[1]    Appellant's sister, Savannah, was age 10 or 11 at the time of the incident.

2

was whiny and might need a nap. After arriving home from the mall, appellant's mother had taken some medication that made her feel sleepy. After sending the girls outside to play, appellant's mother went upstairs to her bedroom and fell asleep. Appellant's father would occasionally check on the children.

While the girls played outside, appellant and R.G. stayed inside appellant's room.[2] The boys were in appellant's room for 10-15 minutes. During that time, they played video games together, but at some point appellant refused to let R.G. play with him any longer. According to appellant, R.G. became angry when he could not play and began to cry and left the room to look for his sister.

R.G. remembered playing with appellant and jumping on the bed, but he did not recall what he and appellant did together. R.G. testified appellant made him feel uncomfortable one time when appellant "wasn't playing right" when they were alone. R.G. testified appellant put his finger in R.G's anus, hit him in the stomach, and told him not to say anything.

S.W. saw R.G. standing in the front window of the house crying for her. S.W. and appellant's sister came back into the house. Appellant played video games in his room alone for a short time. He then joined the other children in Savannah's room where they watched a movie on the television. Appellant's parents were upstairs at the time. S.W. testified that R.G. continued to cry a little while and then calmed down; she thought he was crying because he was tired. R.G. lay down next to his sister and fell asleep.

At some point thereafter, according to appellant and his sister, R.G. jumped on the bed in Savannah's room and he played with his buttocks. Savannah said that R.G. placed his hands on his buttocks and said, "You can't catch me, there is nothing you can do about it." According to appellant, R.G. was trying to get the other children to chase him around the house. R.G. eventually stopped after S.W. told him she would tell their

---

[2] Appellant's room was not fully enclosed; it had three walls and opened up into the kitchen. The only door in the room led to the outside of the house. Appellant's parents' room was upstairs, and Savannah's room was downstairs next to appellant's room.

mother. Appellant's father testified that at some point he saw R.G. running back and forth between Savannah's and appellant's bedrooms and jumping on the bed.

During the trial when asked about R.G.'s actions, S.W. denied that R.G. had touched his buttocks or encouraged the others to chase him or that he jumped on the bed. R.G. did not recall touching his own buttocks while he was on the bed. He testified, however, that his sister had told him that he should not spread his buttocks or put his own finger in his anus. Nonetheless, R.G. remembered jumping on the bed and also recalled that at some point he bumped his head on a shelf when he was jumping on the bed.

Appellant's mother woke up at about 8:30 p.m. that night when she heard a bump. Appellant's father also heard the noise so he went downstairs to investigate and saw appellant and R.G. in appellant's room.

S.W. and R.G. went home shortly thereafter.

Later that same day, R.G.'s mother took R.G. and S.W. to a birthday party at the home of a family friend. R.G. did not interact much with the other children, but instead sat with his mother. R.G.'s mother assumed that he was tired.

After the party, R.G. and his family returned to their home. R.G.'s mother gave him a bath. During the bath she noticed that R.G. flinched when she tried to wash his "bottom." When R.G.'s mother asked R.G. about it, R.G. told her that appellant had hurt him. R.G.'s mother testified that R.G. told her that appellant had "socked" him in the stomach and then stuck his finger in R.G.'s anus. R.G.'s mother tried to examine his buttocks, but R.G. would not allow her to look. R.G.'s mother told him she wanted to take him to the doctor, but the child became frantic, so she decided to put him to bed. R.G. testified he remembered telling his mother that appellant hurt him by putting his finger in his anus. He further testified he remembered telling his mother appellant punched him in the stomach and told him not to say anything.

After R.G. went to bed, his mother called appellant's house and appellant answered the phone. R.G's mother asked to speak to appellant's parents, and he told her to hold on. When he returned to the phone, he told R.G.'s mother that his parents were

4

asleep. She again asked to speak to one of appellant's parents. According to R.G.'s mother, appellant seemed hesitant.

R.G.'s mother asked appellant if something happened between him and R.G. There was a long pause over the phone. R.G.'s mother thought appellant had hung up the phone, and when she received no further response over the phone, R.G.'s mother hung up the telephone.

Appellant confirmed that he spoke to R.G.'s mother over the telephone and that she had asked to speak to his parents. Appellant testified that he set the phone down and went upstairs. Both of his parents were asleep. Appellant woke up his mother, who told him she would call R.G.'s mother back. Appellant's mother testified that at about 11:30 p.m. or 12:00 midnight, appellant shook her and said something, but she told him to go away. Appellant's father also remembered appellant coming to their bedroom and trying to wake up his wife.

When appellant went back to the telephone, no one was on the other end of the line, so he called back R.G.'s mother. According to appellant, at that point R.G.'s mother asked if anything happened to R.G. while he was at appellant's house. Appellant claims that he told her that R.G. hit his head while jumping on the bed. R.G.'s mother recalled telling police that appellant denied anything happened between him and R.G. Appellant told her his parents were sleeping and his mother would return the call the following morning.

The next morning R.G.'s mother noticed that the underwear R.G. had worn the day before had a stain—like a "small flow" of dark red blood—on them, so she put them in a bag.[3] R.G.'s mother took him to the hospital to be examined. The police were also summoned.

---

[3] R.G.'s mother gave the bag containing R.G.'s underwear to the police.

When R.G. was interviewed by police, he confirmed that while appellant and he were alone in appellant's room, appellant grabbed him, pulled his pants down, bent him over and a stuck a finger in his anus. Afterward, appellant pulled up R.G.'s pants, punched him once in the stomach, and told him not to tell anyone what had happened.

Appellant was subsequently interviewed by police, he denied harming R.G. and indicated that he knew it was wrong to put his finger in someone's anus.

### Proceedings in the Juvenile Delinquency Court

In September 2011, a juvenile wardship petition was filed pursuant to Welfare and Institutions Code section 602 seeking to declare appellant a ward of the court. Count 1 of the petition alleged that on July 16, 2011, appellant committed a lewd act upon a child in violation of Penal Code section 288, subdivision (a).

In addition to evidence from R.G. and his family members, appellant and his family members, and police investigators, testimony from medical experts was presented to the court. According to the medical expert, the evidence developed from R.G.'s medical examination shortly after the incident revealed that the child "had an abrasion around his peri-anal tissues on his anal fold." The injury was consistent with a finger being put in a child's anus and that the injury was recent. According to the medical expert, the injury could not have been caused by someone cleaning himself or by riding a bicycle and it would not have been surprising to find blood associated with the injury.

During his closing argument, appellant's counsel argued that the prosecution had failed to satisfy its burden of proof that appellant had injured R.G. or that he had acted with the sexual intent required under Penal Code section 288, subdivision (a). With respect to the issue of intent, prosecutor responded that "[t]here is no other reason to stick your finger in a four-year old's butt except for the arousal, passion, sexual desires. [Appellant's] conduct did show a consciousness of guilt."

On February 5, 2013, the juvenile court found count 1 true and sustained the Welfare and Institutions Code section 602 petition. The juvenile court found further that appellant understood the wrongfulness of his actions. The juvenile court explained its findings of fact in light of the factors contained in the case law which are relevant to the

6

issue of the required sexual intent under Penal Code section 288, subdivision (a). First, the juvenile court determined appellant had reached puberty because he was 13 years old at the time of the incident. The court found the evidence showed appellant had been taught not to touch other people without permission and so understood his actions were wrong. The juvenile court further found that when R.G.'s mother called to speak with appellant's parents, appellant responded by asking if she was calling about whether anything happened between him and R.G. thereby indicating he had "a knowledge and he knew she was calling regarding something that had occurred between him and [R.G.]." The court also found appellant's story changed over time based on the court's view of the evidence that appellant did not tell R.G.'s mother during the telephone call that R.G. had bumped his head, but instead mentioned the incident only later during the investigation.

The juvenile court found that the touching took place in private, after the girls and the boys were separated, and appellant and R.G. were alone. The court also found the nature of the conduct supported the finding of intent. The juvenile court found that appellant attempted to coerce R.G. into silence by hitting him in the stomach and instructing him not to tell anyone about the incident. The court found R.G. to be a credible witness, that he consistently stated that appellant put his finger in his anus, and that his statement was corroborated by physical evidence.

The court imposed terms and conditions of probation, imposed a maximum confinement time of eight years with one day of predisposition credit, and ordered appellant placed home on probation.

Appellant timely appeals.

### DISCUSSION

Appellant argues that sufficient evidence did not support the juvenile delinquency court's true finding that he violated Penal Code section 288, subdivision (a) for lewd act upon a child, R.G. In particular, appellant claims that the evidence fails to support a finding of sexual intent accompanying his physical contact with R.G. Upon reviewing the entire record, we find that there is insufficient circumstantial evidence of sexual intent to violate Penal Code section 288, subdivision (a).

7

The same standard governs review of the sufficiency of evidence in adult criminal cases and juvenile cases. (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.) A criminal conviction not supported by sufficient evidence violates both state and federal due process and is thus invalid. (U.S. Const., amend. XIV, § 1; Cal. Const., art. I, § 15; *People v. Rowland* (1992) 4 Cal.4th 238, 269.) In reviewing the sufficiency of evidence, we must determine whether a reasonable trier of fact could have found a defendant guilty beyond a reasonable doubt on each element of a crime. (*Ibid*.) We view the evidence in the light most favorable to the prosecution (*People v. Johnson* (1980) 26 Cal.3d 557, 578), and we must presume the existence of every fact that the trier of fact could reasonably deduce from the evidence. (*People v. Upsher* (2007) 155 Cal.App.4th 1311, 1322.)

In addition, the sufficient evidence standard is the same whether the evidence is direct or circumstantial. (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 200.) "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt." "'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.' [Citations.]" (*People v. Bean* (1988) 46 Cal.3d 919, 932-933.) "'Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt.'" (*Id.* at p. 933, quoting *People v. Pierce* (1979) 24 Cal.3d 199, 210.) However, if circumstantial evidence lacking substance is that which supports an inference of guilty knowledge, California courts have found such evidence insufficient. (*People v. Williams* (1971) 5 Cal.3d 211, 215-217.)

Furthermore, "[e]vidence which merely raises a strong suspicion of the defendant's guilt is not sufficient to support a conviction. Suspicion is not evidence; it merely raises a possibility, and this is not a sufficient basis for an inference of fact." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) A reversal is warranted if "'upon no

8

hypothesis whatever is there sufficient evidence to support [the conviction].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

With these principles in mind, we review the evidence of appellant's sexual intent presented in the record on appeal.

On appeal, the sole element of Penal Code section 288, subdivision (a) that appellant challenges is the element of intent. For the sake of the appeal he concedes that the physical evidence corroborated R.G.'s claim that appellant inserted his finger into R.G.'s anus, and that perhaps this conduct constituted a battery. However, he claims that sufficient evidence did not establish that he acted with the specific sexual intent required by Penal Code section 288, subdivision (a).

Penal Code section 288, subdivision (a) prohibits "any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." "A lewd or lascivious act can occur through the victim's clothing and can involve 'any part' of the victim's body." (*People v. Martinez* (1995) 11 Cal.4th 434, 444.) "Courts have long indicated that [Penal Code] section 288 prohibits all forms of sexually motivated contact with an underage child. Indeed, the 'gist' of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act. [Citation.] '[T]he purpose of the perpetrator in touching the child is the controlling factor and each case is to be examined in the light of the intent with which the act was done. . . . If [the] intent of the act, although it may have the outward appearance of innocence, is to arouse . . . the lust, the passion or the sexual desire of the perpetrator [or the child,] it stands condemned by the statute. . . .' [Citation.]" (*Ibid.*)

To establish the requisite intent, "'[T]he trier of fact looks to all the circumstances, including the charged act, to determine whether it was performed with the required specific intent.' [Citations.] Other relevant factors can include the defendant's extrajudicial statements [citation], other acts of lewd conduct admitted or charged in the case [citations], the relationship of the parties [citation], and any coercion, bribery, or

9

deceit used to obtain the victim's cooperation or to avoid detection [citation]." (*People v. Martinez, supra,* 11 Cal.4th at p. 445.) In addition, courts have also looked to whether the perpetrator admonished the victim not to disclose the occurrence, physical evidence of sexual arousal, clandestine meetings, and the age of the defendant at the time of the incident.[4] (*In re Jerry M.* (1997) 59 Cal.App.4th 289, 299 ("*Jerry M.*").)

Based on our review of the evidence in the record and the factors outlined in the case law used to determine whether the element of intent is met under Penal Code section 288, subdivision (a), we conclude that the evidence was insufficient to prove appellant acted with the intent to sexually arouse, gratify, or abuse as required by the statute. As we shall explain, sufficient evidence does not support the trial court's findings with respect to several factors cited by the court, and even as to those factors with evidentiary support, a rationale trier of fact could not conclude beyond a reasonable doubt that appellant acted with the required specific intent.

First, although appellant was 13 years old at the time of the incident there was no evidence appellant had reached puberty. The court's finding to the contrary is not supported by anything in the record; there was no evidence presented during the trial that appellant had reached puberty, had expressed any interest or curiosity sex or sexual activity. It appears that the court based its finding that appellant had reached sexual maturity on the fact of appellant's chronological age and nothing more. Given that children's sexual, emotional and physical development varies widely by age, the court's reliance on only the fact of appellant's age to determine he had reached puberty is based on speculation and conjecture. Thus, the conclusion that appellant had reached puberty does not support the court's finding on intent. The court's conclusion in this regard is further undermined by the lack of any evidence of sexual arousal.

---

[4] The court in *Jerry M.* noted that the younger the perpetrator the less likely his acts are with the specific intent of sexual arousal, and at some age "younger than 14 years, . . . the minor cannot as a matter of law have the specific intent of sexual arousal." (*Jerry M., supra,* 59 Cal.App.4th at p. 300.)

Likewise the court's finding that appellant's comments to R.G.'s mother over the telephone reflected his acknowledgment that he had harmed R.G. and that appellant knew she was calling regarding something that had occurred between him and R.G. also lacks a basis in the record. There was no evidence to support the finding that when R.G.'s mother called to speak with appellant's parents, appellant responded by asking if she was calling about whether anything happened between him and R.G. On the contrary both appellant and R.G.'s mother testified during the trial that R.G.'s mother, not appellant raised the issue of whether anything had happened between appellant and R.G. Thus, appellant's telephone conversation does not support any conclusion with respect to appellant's consciousness of guilt.

Furthermore other factors used to determine intent are lacking in this case. The incident was not accompanied by extra judicial statements indicative of a sexual intent and there was no evidence of prior incidents or lewd contact between appellant and R.G. In fact, there was no evidence appellant had engaged in lewd actions on previous occasions with anyone.

Appellant did not employ deceit to gain access to R.G. Appellant's contact with R.G. did not involve clandestine meetings or take place behind closed or locked doors. Although R.G. and appellant were together for 10-15 minutes, they were not alone in the house in a private location. Appellant and R.G. were in appellant's room which opened up into the kitchen on one side and appellant's father checked on the children a number of times during the visit.

Other evidence the court relied upon does not support a conclusion beyond a reasonable doubt that appellant harbored a sexual intent. Evidence that (1) appellant apparently did not initially disclose (to R.G.'s mother) that R.G. had jumped on the bed hitting his head; (2) appellant acknowledged that it was wrong to touch another person without their permission; and (3) appellant struck R.G. in the stomach and admonished the child not tell anyone what had happened, are equally consistent with an intent to avoid detection for injuring R.G., as they are with an intent to sexually exploit R.G.

11

Where the evidence presented provides equal support to two inconsistent inferences, neither is established. (*People v. Tran* (1996)) 47 Cal.4th 759, 772.)

In short, the only evidence in the record cited by the court which rises above the level of suspicion to support an inference of a sexual intent, is the act itself—that appellant pulled down R.G.'s pants and put his finger in R.G.'s anus. In fact, the nature of the act was the only evidence the prosecutor cited during the trial to provide intent. Here, the act may be sexually suggestive. Nonetheless, under Penal Code section 288, subdivision (a) it is not enough that a child perpetrator has committed a sexually suggestive act. Penal Code section 288, subdivision (a) expressly states that commission of the act must be sexually motivated as well. Where there is no evidence that a prepubescent child has been sexually aroused or is capable of sexual arousal, evidence that an inappropriate, sexually suggestive act has been committed is not sufficient, standing alone, to satisfy the requirement that the child perpetrator committed the act with intent to arouse his or her own sexual desires.

We do not condone or minimize appellant's conduct, which was cruel and reprehensible. Nonetheless, the evidence is insufficient to prove that appellant was capable of, or motivated by, sexual gratification or lust beyond a reasonable doubt. The basic purpose of Penal Code section 288 is to provide children with "special protection" from sexual exploitation. (See *People v. Martinez, supra,* 11 Cal.4th at pp. 443-444.) Here, the record does not provide sufficient evidence that appellant sexually exploited R.G. Instead the record shows that appellant was an apparently hostile 13-year-old who got into some kind of disagreement with a four-year-old over a video game and whose conduct was more consistent with an intent to annoy and injure the younger boy than with sexual arousal. As the court found in *Jerry M.,* under such circumstances, appellant "was perhaps guilty of battery ([Pen. Code,] § 242), but the record does not support a true finding beyond a reasonable doubt of conduct intended sexually to exploit a child – the 'gist' of [Penal Code] section 288, subdivision (a)." (*In re Jerry M., supra,* 59 Cal.App.4th at p. 300.)

In view of the foregoing we conclude that sufficient evidence in the record does not support the court's finding beyond a reasonable doubt that appellant had the requisite sexual intent pursuant to Penal Code section 288, subdivision (a).

### *DISPOSITION*

The judgment is reversed.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**                    **ZELON, J.**